MYLER v. BENTLEY.

1. ANIMALS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—HORSE RUNNING AT LARGE.

In an action for personal injuries and damages to plaintiff's automobile caused by a collision between the automobile and a horse owned by defendant and charged to have been allowed by him to run at large in violation of 2 Comp. Laws 1915, § 7285, the questions of defendant's negligence and plaintiff's contributory negligence, *held*, under the evidence, for the jury, under proper instructions.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—SUDDEN EMERGENCY.

The law makes allowance for acts done in an emergency and in sudden peril and for lack of coolness of judgment incident thereto.

Error to Calhoun; North (Walter H.), J. Submitted January 10, 1924. (Docket No. 36.) Decided March 5, 1924.

Case by Hugh P. Myler against Ben K. Bentley for personal injuries and damages to automobile. Judg-

ment for plaintiff.  Defendant brings error.  Affirmed.

*J. M. Hatch* and *Joseph L. Hooper,* for appellant.

*James W. Mackey,* for appellee.

CLARK, C. J.  Plaintiff's automobile, driven by him along a paved country highway, in the nighttime, collided with a horse of defendant, claimed to have been permitted negligently to run at large in the highway, contrary to section 7285, 2 Comp. Laws 1915. Plaintiff was injured.  The automobile was damaged. Averring such claimed negligence to be the proximate cause of the injury and damage, plaintiff brought suit and had verdict and judgment.  Defendant brings error.

Defendant's farm adjoined the highway.  He owned seven horses.  Returning to his home about 9 o'clock that night, he found two of them out of the inclosure. He drove them back, and retired, making no effort to ascertain whether other of his horses was also out. The collision followed soon thereafter.  Defendant's negligence was a jury question, properly submitted as follows:

"Did Mr. Bentley use reasonable care to prevent the horse from running at large on the highway?  In considering that question you have right to consider all the facts shown here including the fact that when Mr. Bentley came home that evening he found two other horses that had gotten outside the pasture lot or inclosure in which they had been placed and put them in, and in view of that fact did he use reasonable care to ascertain whether the others were there including the one that collided with this machine.  That is a question of fact I leave to you for consideration, saying that Mr. Bentley was bound to use in that regard just such care and caution as a reasonably careful and prudent man would use to see that his stock, for instance his horses, if it was one of Mr. Bentley's

horses, was not upon the highway in violation of the law."

Plaintiff testified:

"Well, as I said, I saw the horse coming toward me it wasn't—couldn't have been very much of a distance because right away it happened, right away into the road.    At first it wasn't right on the road but it crossed right into the road and after it got most to it I turned the wheel right around as sharp as I could .to the right and the horse merely hit the front fender and caught the windshield right in front of me that way and went by.    It didn't light on us except in quick flash.    Didn't fall down on the machine and stay there or anything because I drove the machine right along.    That is I tried to and I turned it as best I could from going into the ditch on the right-hand side of the road.    I had turned it to the right, I stepped on the accelerator to keep it from going into the .ditch.    I kind of lost control because I couldn't turn it very well and get out in the road and I got out in the road to wave down some machine because I was bleeding quite bad and I didn't know how bad the girls were hurt.    There were some machines passing and neither one of them stopped and it was all done quick.    It was quick done and I don't remember all the details of it."

Plaintiff also testified that the lights of the automobile were fairly good, and that, as the horse came running toward him, he, in sudden peril, applied the foot brake, but not the emergency brake, as he did not have time, and that he quickly changed the course of the car to avoid a collision.    Counsel for defendant stresses plaintiff's failure to use the emergency brake, his turning quickly to the right, off the edge of the pavement, and his turning quickly back upon the road, as contributory negligence as a matter of law.    But the law makes allowance for acts done in an emergency and in sudden peril and for lack of coolness of judgment incident thereto.    *Gibbard* v. *Cursan,* 225 Mich. 311.    Under all the evidence, whether plaintiff was

guilty of contributory negligence was a jury question, correctly submitted.

The pavement had been laid a short time before the accident.   The portion where the accident happened was being used commonly by the public.   The trial judge was right in instructing the jury that the highway—

"was open to public travel and you must view it in the light of being in public use at that time."

Other questions require no discussion.   No reversible error appears.

Judgment affirmed.

McDONALD, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.