MOSKALIK v DUNN

OPINION OF THE COURT

1. TRIAL—COURT RULES—COMPLIANCE—PREJUDICE—APPEAL AND ER-
    ROR.

    Failure by a trial judge to comply with a court rule is not per se
    reversible error unless it is so offensive to the maintenance of a
    sound judicial process that it can never be regarded as harm-
    less or the court decides, for prophylactic reasons, to require
    undeviating compliance with a particular rule; otherwise, ab-
    sent prejudice suffered by the complaining party attributable to
    the failure to observe the rule, reversal is not appropriate.

2. APPEAL AND ERROR—NEW TRIAL—ISSUE OF FIRST IMPRESSION—
    PRESERVATION OF ISSUE.

    To reverse and order a new trial simply because the case involves
    an issue which, if the Michigan Supreme Court ignores the
    failure to preserve the issue, becomes one of first impression, is
    disproportionate.

3. TRIAL—INSTRUCTIONS—STANDARD JURY INSTRUCTIONS—COURT
    RULES—FAILURE TO OBJECT—FAIR TRIAL.

    A court rule provides that although the Standard Jury Instruc-

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts §§ 82–86.
    Power of court to prescribe rules of pleading, practice, or procedure,
    158 ALR 715.
[2] 58 Am Jur 2d, New Trial § 23.
[3] 53 Am Jur, Trial § 540.
[4–6, 8, 10, 15, 17] 57 Am Jur 2d, Negligence § 76.
[7] 53 Am Jur, Trial § 827.
[9, 10] 4 Am Jur 2d, Appeal and Error § 172.
    5 Am Jur 2d, Appeal and Error § 723.
[11] 53 Am Jur, Trial §§ 832, 833.
[12–14, 16, 19] 53 Am Jur, Trial §§ 508 *et seq.,* 844–847.
[18] 53 Am Jur, Trial § 512 *et seq.*
[20] 5 Am Jur 2d, Appeal and Error §§ 797, 955.
[21] 5 Am Jur 2d, Appeal and Error §§ 652, 667.
[22] 58 Am Jur, Witnesses § 565.

tions recommend that no instruction be given on a certain matter, the judge may, in a proper case, instruct if "necessary to state accurately the applicable law"; it is, therefore, necessary to advert to the merits to determine whether an instruction given in such a case was so clearly wrong that, even though no objection was voiced, plaintiffs were deprived of a fair trial (GCR 1963, 516.6[3]).

4. NEGLIGENCE—SUDDEN EMERGENCY—CONDUCT—STANDARD MAN TEST—COURSE OF ACTION.

A sudden emergency, if a person is caught in one, is part of the circumstances in the light of which his conduct at that time is to be judged, and if the situation is one which would disturb the judgment of the standard man, that fact is to be considered; the test is whether the actor took one of the courses of action which a standard man in that emergency might have taken, and such a course is not negligent even though it led to an injury which might have been prevented by adopting an alternative course of action.

5. NEGLIGENCE—SUDDEN EMERGENCY—CHOICE OF ACTION—REASONABLENESS.

The fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action in determining whether his conduct is negligent toward another.

6. NEGLIGENCE—SUDDEN EMERGENCY—STANDARD OF CARE.

The standard of care to be observed by one in an emergency situation is no different than the standard of care to be observed generally; the inquiry is whether the person acted as would a reasonably prudent person under the same or similar circumstances, and the existence of an emergency is but one of the factors to be taken into consideration.

7. TRIAL—INSTRUCTIONS—OBJECTIONS—COURT RULES.

The purpose of requiring a timely objection to a jury instruction is to avoid improper instruction and, if perchance an improper instruction which can be corrected has been given, to facilitate its correction before verdict, thereby avoiding costly new trials (GCR 1963, 516.2).

DISSENTING OPINION

T. M. KAVANAGH, C. J., and SWAINSON and WILLIAMS, JJ.

8. TRIAL—INSTRUCTIONS—NEGLIGENCE—STANDARD OF CARE—EMERGENCY SITUATION—APPEAL AND ERROR—STANDARD JURY INSTRUCTIONS.

*Trial court instruction on the standard of care owed an individual*

*in an emergency situation was reversibly erroneous in the light of the Michigan Standard Jury Instruction recommendation that no such instruction be given (SJI 13.04).*

9. APPEAL AND ERROR—SUPREME COURT—REVIEW SUA SPONTE.

*Generally, the Michigan Supreme Court is extremely reluctant to discuss issues not properly preserved for appeal; however, the Court has nonetheless preserved its right to review* sua sponte *in appropriate cases.*

10. APPEAL AND ERROR—REVIEW SUA SPONTE—INSTRUCTIONS—FAILURE TO OBJECT—STANDARD JURY INSTRUCTIONS—IMMINENT PERIL—COURT RULES.

*Case in which plaintiffs claim that an instruction should not have been given due to the presence of a Standard Jury Instruction which recommends that no instruction be given on the duty of one in imminent peril although they failed to object to the charge is an appropriate case for* sua sponte *review because of its importance as a case of first impression raising the issue of the effect of a recommendation that no instruction be given in the Michigan Standard Jury Instructions and because it is a case of first impression interpreting the enabling court rule (GCR 1963, 516.6; SJI 13.04).*

11. TRIAL—INSTRUCTIONS—FAILURE TO OBJECT—STANDARD JURY INSTRUCTIONS—COURT RULES.

*Failure to object, in future cases, to the trial court's failure to follow the Standard Jury Instructions and a court rule, providing that "[w]here the SJI Committee Report recommends that no instruction be given on a particular matter, the court shall not give an instruction on the matter unless it specifically finds for reasons stated on the record that (a) such an instruction is necessary to state accurately the applicable law and (b) the matter is not adequately covered by other pertinent Standard Jury Instructions" will generally be held dispositive precluding the raising of this issue on appeal (GCR 1963, 516.2, 516.6).*

12. TRIAL—INSTRUCTIONS—STANDARD JURY INSTRUCTIONS—COURT RULES.

*The instructions in Standard Jury Instructions do not have either the force or effect of court rules; however, the court rule governing the use of Standard Jury Instructions is every bit as binding upon trial courts as any other court rule and a portion of that rule is unequivocal in its command that "[w]here the*

*SJI Committee Report recommends that no instruction be given on a particular matter, the court shall not give an instruction on the matter unless it specifically finds for reasons stated on the record that (a) such an instruction is necessary to state accurately the applicable law and (b) the matter is not adequately covered by other pertinent Standard Jury Instructions" (GCR 1963, 516.6, 516.6[1], 516.6[3]).*

13. TRIAL—INSTRUCTIONS—RECORD—JUDGES—ATTORNEY AND CLIENT —REQUESTS TO CHARGE—OBJECTIONS—STANDARD JURY INSTRUCTIONS—COURT RULES.

*While the direct obligation under a court rule of making an appropriate record prior to giving instructions specifically not recommended by Standard Jury Instructions, has been placed on the trial judge, nonetheless, trial counsel, through written requests to instruct and the opportunity to object to the court's instructions as given, bear a substantial burden in assuring the appropriate use of Standard Jury Instructions and proper adherence to a court rule governing Standard Jury Instructions; this "burden" upon counsel is, of course, no greater than an attorney's normal duty to guard against erroneous instructions in order to assure error-free proceedings (GCR 1963, 516.6, 516.6[3]).*

14. TRIAL—INSTRUCTIONS—STANDARD JURY INSTRUCTIONS—COURT RULES.

*As a court rule indicates, in areas of the law which Standard Jury Instructions have not covered, the trial court has within its power the giving of additional instructions (GCR 1963, 516.6[2], 516.6[4]).*

15. TRIAL—INSTRUCTIONS—PERILOUS SITUATION—COURT RULES.

*The giving of a charge upon the duty of one in a perilous situation, contrary to the court rule which provides in part that where the Standard Jury Instruction Committee Report recommends that no instruction be given on a particular matter, the court shall not give an instruction on the matter, is error (GCR 1963, 516.6[3]).*

16. TRIAL—STANDARD JURY INSTRUCTIONS—COURT RULES.

*A strict adherance to the words of a court rule regarding Standard Jury Instructions is required (GCR 1963, 516.6).*

17. TRIAL—INSTRUCTIONS—PERILOUS SITUATION—STANDARD JURY INSTRUCTIONS—RECORD—APPEAL AND ERROR.

*Trial court's failure to state its reasons, on the record, for not*

*following a Standard Jury Instruction recommendation that no instruction be given on the subject of the duty of one in a perilous situation is reversible error (GCR 1963, 516.6[3]; SJI 13.04).*

18. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE—EVIDENCE—APPEAL AND ERROR.

*Failure to instruct when properly requested, upon a party's cause of action which is admitted or supported by the evidence, is error (GCR 1963, 516.7).*

19. TRIAL—INSTRUCTIONS—HUSBAND AND WIFE—ACTION—DERIVATIVE CAUSE OF ACTION—MEDICAL EXPENSES—APPEAL AND ERROR—REVERSIBLE ERROR.

*There is no reversible error on the point that the jury should have been specifically instructed on the husband's derivative cause of action for medical damages where the jury returned a verdict of no cause of action; this instructional error could not have affected in any way the result reached by the jury.*

20. APPEAL AND ERROR—SUPREME COURT—PREJUDICE.

*Michigan Supreme Court will not reverse where error in the trial proceedings would not and could not have changed the result and there is no prejudice.*

21. APPEAL AND ERROR—FAILURE TO OBJECT.

*Technically, plaintiffs' failure to specifically object to a line of questioning on the grounds raised on appeal precludes assignment of error.*

22. TRIAL—CROSS-EXAMINATION—UNRELATED HOLDUP INCIDENTS—APPEAL AND ERROR—HEARSAY—STATE OF MIND.

*Defense counsel's questioning a witness on unrelated holdup incidents was not error; the questioning concerned the relevant issue whether or not defendant's knowledge of such unrelated incidents, i.e., his state of mind prompting him to act, was shared or reasonable and it was not immaterial hearsay as the witness was not asked about the truth of the matter but instead he was queried about his "state of mind".*

Appeal from Court of Appeals, Division 1, V. J. Brennan, P. J., and T. M. Burns and Paul L. Adams, JJ., reversing Wayne, James R. Stelt, J. Submitted May 9, 1974. (No. 6 May Term 1974, Docket No. 54,954.) Decided September 6, 1974.

Complaint by Ronald Moskalik and Judith Moskalik against Albert Dunn, Jr., for damages for injuries Judith sustained from being shot in defendant's bar and for medical expenses. Judgment for defendant. Plaintiffs appealed to the Court of Appeals. Reversed. Defendant appeals. Reversed, and verdict reinstated.

*Norman P. Ochs,* for plaintiffs.

*Garan, Lucow, Miller, Lehman, Seward & Cooper* (by *Ronald C. Winiemko),* for defendant.

LEVIN, J. Our colleagues declare that a trial judge, who decides to instruct a jury on a matter the Standard Jury Instruction Committee recommends no instruction be given, errs reversibly if he fails to comply with GCR 1963, 516.6(3), requiring that the judge, in such case, specifically find for "reasons stated on the record that (a) such an instruction is necessary to state accurately the applicable law and (b) the matter is not adequately covered by other pertinent Standard Jury Instructions".

I

Trial judge failure to comply with a court rule is not per se reversible error unless it is so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless or the court decides, for prophylactic reasons, to require undeviating compliance with a particular rule. Otherwise, absent prejudice suffered by the complaining party attributable to the failure to observe the rule, reversal is not appropriate. Any other approach to our reviewing responsibility would manifestly be unworkable.

Our colleagues do not predicate their opinion for reversal on the offensiveness of the judge's departure from the rule or on prophylactic grounds. On the contrary, they declare "that in future cases failure to object to the trial court failure to follow the Standard Jury Instructions and GCR 1963, 516.6, will generally be held dispositive precluding the raising of this issue on appeal. GCR 1963, 516.2."

While the Court of Appeals, in an unpublished opinion, reversed because the judge gave an improper charge,[1] our colleagues expressly decline to consider the "substantive adequacy, accuracy, or necessity of this instruction". Thus, they do not predicate their opinion for reversal on a conclusion that the instruction was erroneous and prejudicial. Cases where defects of fundamental importance in the conduct of a trial, although not properly preserved, were recognized out of concern that a party may have been deprived of a fair trial are, accordingly, not in point.

To reverse and order a new trial simply because the case involves an issue which, if the Court ignores the failure to preserve the issue, becomes one of first impression strikes me as disproportionate.

While courts sometimes, although limiting the

---

[1] The Court of Appeals declared:

"The confusing and clearly erroneous charge given by the trial judge in this case illustrates the reason for the recommendation of the committee. This is not to say that a judge should never give an instruction as to the standard of care required in the face of imminent peril. It is the task of the trial judge to determine the proper instructions to be given to a jury, depending upon the contentions and proofs in the particular case and the need to instruct the jury with regard to the same. In general, the recommendations of the Committee on Standard Jury Instructions should be followed. GCR 1963, 516.6(3). In this case, the trial court erred reversibly by giving an improper charge." *Moskalik v Dunn*, (Court of Appeals Docket No. 13119, decided March 1, 1973 [unreported]).

retroactivity of a new pronouncement, grant to the successful litigant the benefit of the decision as a reward for advancing the issue and as encouragement to others to press for reform of the law, our colleagues' opinion here is neither prospective nor retroactive—it applies to this case only. In sum, they declare that trial judge failure to comply with Rule 516.6(3) is reversible error; but in future cases, in general, such error will not be recognized if the appellant does not object; however, in this case a new trial will be ordered although appellant did not preserve the issue.

While we have, perhaps too frequently, departed from the no objection/ no ruling/ no error formulation, it is still not remarkable for an appellate court to refuse to entertain assignments of error not properly preserved. The plaintiffs in this case would not be rewarded with the benefit of the pronouncement in our colleagues' opinion, but with an exception to it.

## II

Rule 516.6(3) provides that although the Standard Jury Instructions recommend that no instruction be given on a certain matter, the judge may, in a proper case, instruct if "necessary to state accurately the applicable law".

It is, therefore, necessary to advert to the merits, as did the Court of Appeals, to determine whether the instruction was so clearly wrong that, even though no objection was voiced, plaintiffs were deprived of a fair trial.

The defendant bar owner was confronted with a sudden emergency when armed gunmen entered his establishment. The pertinent law, as stated by still current and respected authority:

"If a person is caught in a sudden emergency, that is part of the circumstances in the light of which his conduct at that time is to be judged. And if the situation is one which would disturb the judgment of the standard man, that fact is to be considered. The test is whether the actor took one of the courses of action which a standard man in that emergency might have taken, and such a course is not negligent even though it led to an injury which might have been prevented by adopting an alternative course of action." 2 Harper & James, Law of Torts, § 16.11, pp 938–939.

"In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action." Restatement Torts, 2d, § 296, p 64.

Similarly, see Prosser, Torts (4th ed), § 33, p 168; 57 Am Jur 2d, Negligence, § 90, pp 437–438; 65 CJS, Negligence, § 17, pp 603–614; 18 Michigan Civil Jurisprudence, Negligence, § 5, pp 198–200.

Michigan case law is in accord.[2] I agree that we should defer consideration, until a case where the issue is properly . preserved and presented, of whether it would be better policy not to instruct at all on this issue to avoid undue emphasis on but one of the factors to be considered by the jury in deciding whether the actor measured up to the law's standard of care. Before deciding that question we might benefit from a more comprehensive statement of the views of the SJI Committee and other amici. For this case, it is enough to say that the instruction was, in general, in accordance with the law.

### III

The instruction was, indeed, erroneous to the

---

[2] *Schow v Paugh,* 350 Mich 304, 308; 86 NW2d 261 (1957); *Pampu v Detroit,* 315 Mich 618, 624–625; 24 NW2d 588 (1946); *Myler v Bentley,* 226 Mich 384, 386; 197 NW 521 (1924).

extent it stated that an actor confronted with a sudden emergency "is not held to the same standard of care". The standard of care to be observed by one in an emergency situation is no different than the standard of care to be observed generally. The inquiry is whether the person acted as would a reasonably prudent person under the same or similar circumstances. The existence of an emergency is but one of the factors to be taken into consideration.

However, in the very next sentence the judge correctly stated, "[H]e must exercise such care as the reasonable person would exercise under those circumstances". It is unlikely that the error in the instruction was a source of confusion or misled the jury.

The instruction was requested by defendant's counsel in writing in advance. Plaintiffs' counsel did not object before the jury was instructed, nor did he object, when asked, after the instructions were given.

The requirement of a timely objection is not an arbitrary one. Its purpose is to avoid improper instruction and, if perchance an improper instruction which can be corrected has been given, to facilitate its correction before verdict, thereby avoiding costly new trials. The defect in the instruction was not of such magnitude as to constitute plain error requiring a new trial without regard to the failure to bring it to the attention of the judge.

The Court of Appeals is reversed. The jury's verdict is reinstated.

T. G. KAVANAGH, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

WILLIAMS, J. *(dissenting)*. This case presents

three issues raised by plaintiffs in the form of alleged errors stemming from the trial court's handling of this unusual negligence action. Those questions are:

(1) Was the trial court instruction on the standard of care owed an individual in an emergency situation reversibly erroneous in light of the Michigan Standard Jury Instruction recommendation that no such instruction be given?

(2) Was the trial court failure to instruct on co-plaintiff husband's cause of action for medical expenses reversible error?

(3) Was it reversible error for the trial court to allow defense counsel to question two witnesses regarding their knowledge of unrelated holdup incidents of a similar character as the incident at bar?

We answer the first question posed in the affirmative and accordingly affirm the Court of Appeals' reversal on this point. Though unnecessary to disposition of this cause, in order to guide the trial court on remand, we answer the second and third questions in the negative, reversing the Court of Appeals on these two points. In the second question there was error but not reversible error.

## I. FACTS

The instant litigation stems from a barroom shoot-out precipitated by an attempted holdup. Co-plaintiff Judith Moskalik was wounded in the arm by a bullet fired by one of three would-be robbers during the course of this holdup attempt which took place in the early hours of June 30, 1969. At the time of the shooting, Ms. Moskalik, one of a dozen people in the bar, was sitting next to the bar

owner and operator, defendant, Albert Dunn, Jr. She was present in the bar waiting to go out on a date with the bartender.

The first shot, the shot striking Ms. Moskalik, was fired by one of the robbers. It was controverted at trial whether defendant Dunn "drew" the shot by reaching for his own gun or whether he reached for his pistol and returned the robber's fire after Ms. Moskalik was wounded. In any case, after an exchange of gunfire, the robbers were driven off.

Ms. Moskalik and her husband (who claimed only medical expenses resulting from his wife's injury) filed suit for damages on August 5, 1969, alleging that defendant's action in drawing and firing his gun after the robber's warning to everyone in the bar: "Freeze, this is a holdup", was a failure to exercise reasonable care with respect to co-plaintiff, an alleged business invitee. After a full jury trial commencing November 16, 1971, a verdict for defendant was returned resulting in a judgment of no cause for action on November 24, 1971.

The Court of Appeals, in an unpublished per curiam opinion, reversed, remanding for new trial on the basis of three "errors", the same three issues the parties raise on this appeal. (Docket No. 13119, decided March 1, 1973 [unreported]). We granted leave to appeal on September 26, 1973. 390 Mich 776 (1973).

## II. EMERGENCY SITUATION INSTRUCTION
### (ISSUE #1)
### A. THE INSTRUCTION

The relevant portion of the trial court instruction under attack reads as follows:

"Your verdict will be for the Plaintiff if she was injured and the Defendant was negligent and such negligence was the proximate cause of her injuries. The happening or occurrence of an incident on the premises is not evidence of negligence. The duty of a proprietor to protect a customer or guest against the agression *[sic]* of third parties on the premises is that of the exercise of ordinary care in keeping the premises safe. No such duty arises until the owner has knowledge or by the exercise of such care could have discovered the hazard to the customers safety and thereafter fails to use reasonable care to eliminate it.

"In determining whether or not the Defendant employed rasonable *[sic]* care upon discovery of the holdup men, I should instruct you that the law of this State makes allowances for fright and lack of coolness of judgment when one is faced with the emergency and he is not held to the same standard of care which he usually exercises when he finds himself in a perilous situation. He must exercise such care as the reasonable person would exercise under those circumstances."

Plaintiffs claim that the last paragraph of this instruction should not have been given due to the presence of Standard Jury Instruction (Civil) 13.04 which recommends that no instruction be given on point, and that, in any case, the instruction given was a substantively erroneous negligence standard for emergency situations.

## B. LACK OF OBJECTION

The threshold consideration before us is lack of objection to this charge by plaintiffs. Subsequent to instructing the jury, the trial judge specifically sought objections from both parties to the instructions for the record. Plaintiffs, at that time, made two objections, neither applicable to this issue. Defendant contends that this instructional issue was therefore not properly preserved for appeal.

Generally, this Court is extremely reluctant to

discuss issues not properly preserved for appeal. GCR 1963, 516.2; *Sinnott v Noble,* 390 Mich 91; 211 NW2d 842 (1973).

However, as we have noted on numerous occasions, we have nonetheless preserved our right to review *sua sponte* in appropriate cases. *People v Crittle,* 390 Mich 367, 370–371; 212 NW2d 196 (1973); *People v Harrison,* 386 Mich 269, 275; 191 NW2d 371 (1971); *People v Dorrikas,* 354 Mich 303, 316; 92 NW2d 305 (1958); *People v Steeneck,* 247 Mich 583; 226 NW 231 (1929); *People v Holmes,* 292 Mich 212, 215–216; 290 NW 384 (1940); *People v Kelsey,* 303 Mich 715, 719; 7 NW2d 120 (1942).

This case is an appropriate case for *sua sponte* review because of its importance as a case of first impression raising the issue of the effect of a recommendation that no instruction be given in the Michigan Standard Jury Instructions and because it is a case of first impression interpreting the enabling rule, GCR 1963, 516.6. As a result we follow the lead of the Court of Appeals, and proceed to the merits of this issue.[1]

## C. THE EFFECT OF SJI RECOMMENDATION OF NO INSTRUCTION

The draftsmen of the Michigan Standard Jury Instructions (SJI) carefully and specifically considered the problem of whether an instruction was appropriate on the duty of one in imminent peril towards others. The following recommendation and conclusion were reached:

---

[1] It should be borne in mind, of course, that in future cases failure to object to the trial court failure to follow the Standard Jury Instructions and GCR 1963, 516.6, will generally be held dispositive precluding the raising of this issue on appeal. GCR 1963, 516.2.

"13.04 Duty of One in Imminent Peril and Responsibility of the Person Causing the Perilous Situation

"The committee recommends that no instruction be given either on the duty of one in imminent peril or the responsibility of the person causing the perilous situation.

*"Comment*

"The degree of care required of one confronted with imminent peril does not vary merely because of the unusual circumstances. The standard is neither higher nor lower, the inquiry remaining the same as to whether the one sought to be charged with negligence or contributory negligence acted as a reasonably careful person would act under the same or similar circumstances. *Triestam v Way,* 286 Mich. 13 at 17, 281 N.W. 420 at 421 (1938).

"The liability of one causing a perilous situation is governed by the general principles of negligence law.

"The committee recommends that no special instruction be given concerning this matter. The principles suggested are treated in part by instructions on negligence (10.00 and 11.00), sudden emergency (12.01(A) and 12.03(A)), and subsequent negligence (14.01). Any additional instructions may be misleading and argumentative and the matter should be left for argument by counsel."

The instructions in SJI do not have either the force or the effect of court rules. GCR 1963, 516.6(1). However, GCR 1963, 516.6, the court rule governing the use of SJI *is* every bit as binding upon trial courts as any other court rule. GCR 1963, 516.6(3) is unequivocal in its command that:

"(3) Where the SJI Committee Report recommends that no instruction be given on a particular matter, the court shall not give an instruction on the matter unless it specifically finds for reasons stated on the record that (a) such an instruction is necessary to state accurately the applicable law and (b) the matter is not adequately

covered by other pertinent Standard Jury Instructions."[2]

The instant case is controlled completely by this court rule. SJI (Civil) 13.04 is directly on point in its consideration of, and recommendation on, *inter alia,* the duty of one in an imminent peril situation; its recommendation, as quoted in full *supra,* is that no instruction at all be given. Yet defense counsel requested,[3] and the trial court gave a charge which directly focused upon this "perilous situation" issue.[4] The giving of such a charge, contrary to the court rule, is error.

In reaching this conclusion, it is important to note the appellate posture of this case. Due to the trial court failure to meet the requirements of GCR 1963, 516.6(3), we do not have before us questions concerning the substantive adequacy, accuracy, or necessity of this instruction. Instead the question posed is solely whether any instruction on point could have been given without an

---

[2] This requirement that the trial court state reasons on the record justifying its failure to follow recommendations found in SJI is a common requirement in "mandatory" "pattern instructions" jurisdictions. *See generally Annotation-Construction of Statutes or Rules Making Mandatory The Use of Pattern or Uniform Approved Jury Instructions,* 49 ALR3d 128, 141–142.

[3] The controverted last paragraph of the trial court instruction under discussion was apparently in large part obtained from "Defendant's Request to Charge #2".

While the direct obligation under GCR 1963, 516.6(3), of making an appropriate record prior to giving instructions specifically not recommended by SJI, has been placed upon the trial judge, nonetheless, trial counsel, through written requests to instruct and the opportunity to object to the court's instructions as given, bear a substantial burden in assuring the appropriate use of SJI and proper adherence to GCR 1963, 516.6. This "burden" upon counsel is, of course, no greater than an attorney's normal duty to guard against erroneous instructions in order to assure error-free proceedings. *Cf.* Code of Professional Responsibility and Canons, Canon 7.

[4] As the court rule indicates, in areas of the law which SJI has not covered, the trial court has within its power the giving of additional instructions. GCR 1963, 516.6(2) and (4); *Hughes v Polk,* 40 Mich App 634, 642–643; 199 NW2d 224 (1972).

explanatory statement on the record.[5] We hold, following the clear dictates of GCR 1963, 516.6(3), that such an instruction could not be given.

To hold otherwise would, in effect, be to emasculate the purpose and the effect of SJI. Standard Jury Instructions would hardly be "standard" if their use was dictated by the whim or caprice of the Bench or Bar. Accordingly we go on record today as requiring a strict adherence to the words of GCR 1963, 516.6. Our purpose is to promote lawful, understandable, effective and uniform instructions in every courtroom throughout the state.

The trial court's failure to state its reasons, on the record, for not following the SJI (Civil) 13.04 recommendation that no instruction be given on this subject, is reversible error. GCR 1963, 516.6(3). The Court of Appeals' reversal of the trial court on this point is affirmed.

## III. FAILURE TO INSTRUCT ON HUSBAND'S CAUSE OF ACTION ERROR (ISSUE #2)

As we noted *supra,* reversal on the SJI issue being dispositive, consideration of the remaining two issues is not necessary to our disposition of this cause. However, we nonetheless consider these

---

[5] This difference in appellate posture is of major significance. The mere existence of SJI does not mean that the substantive law encapsulated therein is necessarily accurate nor that it is no longer open to change or attack. Cf. *Applicability of MAI Instructions v The Substantive Law of Missouri,* 39 U of Mo at Kansas City L Rev 129 (1970).

GCR 1963, 516.6 spells out the appropriate procedural route to follow in challenging the substantive law behind a particular SJI instruction or recommendation. Had the trial judge in the instant case made an appropriate record under GCR 1963, 516.6(3) (or if he had refused to do so over counsel's explicit objection on the record), the substantive question whether SJI (Civil) 13.04 adequately or accurately represents the substantive law of Michigan, would then have been properly before us.

two issues, as did the Court of Appeals, in order to guide the trial court upon remand.

Without question, the instructions given called only for a verdict for or against *Judith* Moskalik. Plaintiffs contend the jury should have been specifically instructed on the causes of action of both plaintiffs. Plaintiffs specifically requested such instruction and plaintiffs specifically objected to the failure of the trial court to so instruct.

We agree with the Court of Appeals finding of error. The failure to instruct when properly requested, upon a party's cause of action which is admitted or supported by the evidence, is error. GCR 1963, 516.7. Defendant did not contest at trial, and does not contest now, plaintiff *Ronald* Moskalik's right to recover medical expenses for his wife Judith's treatment *if defendant was found liable to Judith by the jury.*

However, it is this latter qualification that leads us to agree with defendant that there is no reversible error on this point. Ronald Moskalik's cause of action is entirely derivative in nature. If Judith's cause of action failed, defendant had no obligation to reimburse Ronald for expenses not of defendant's making. If her cause of action had succeeded, defendant would have been liable for the medical damages as stipulated by the parties. Thus this instructional error could not have affected in any way the result reached by the jury.[6]

---

[6] It should be noted that the *damages* claimed by Ronald Moskalik in his cause of action were included in the jury instructions. The trial court gave the following instruction:

"You should include each of the following elements of damage which you decide has been sustained by the Plaintiff to the present time, the pain, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, embarrassment, humiliation or mortification, the disability or loss of impairment or the disfigurement of the Plaintiff, *the reasonable expenses of the necessary medical care treatment and services, and there is the figures on the board of $1,750.00, which has been agreed to by the attorneys.*" (Emphasis added.)

Where error in the trial proceedings would not and could not have changed the result, it is well established law in this jurisdiction that where there is no prejudice, this Court will not reverse. GCR 1963, 529.1; *Knoper v Burton,* 383 Mich 62, 68; 173 NW2d 202 (1970); *Thompson v Peters,* 386 Mich 532, 538; 194 NW2d 301 (1972); *McGuire v Rabaut,* 354 Mich 230, 237–238; 92 NW2d 299 (1958); *Horowitz v Blay,* 193 Mich 493, 498; 160 NW 438 (1916); *Fowles v Rupert,* 143 Mich 246, 248; 106 NW 873 (1906); *Manning v Bresnahan,* 63 Mich 584, 587; 30 NW 189 (1886).

Thus we find no reversible error in the trial court failure to specifically instruct as to Ronald Moskalik's cause of action and, accordingly, we reverse the Court of Appeals on this issue.

## IV. QUESTIONING ON SIMILAR UNRELATED INCIDENTS (ISSUE #3)

The Court of Appeals found reversible error in defense counsel's questioning, over plaintiffs' objections, of the bartender and Judy Moskalik about their knowledge at the time of the robbery of similar holdups in the area. The following two brief colloquies are in dispute:

A. (Questioning of James Fennelly, bartender.)
*"Q.* Were you familiar with some incidents that occurred around that time, say in the Miami Bar and a few places in that area?

*"Mr. Ochs [plaintiffs' attorney]:* I am going to object to any other incidents occurring in any other parts. I don't think it is material to this situation, Your Honor.

*"Mr. Schwartz [defendant's attorney]:* It may go to the frame of mind.

*"The Court:* The witness may answer, if he knows.

The figure of $1,750 represented stipulated medical expenses, damages claimed only by *Ronald* Moskalik.

"*The Witness:* Not any specific incident.

"*Q. (By Mr. Schwartz)* Well, were you familiar with some incident where just at closing time robbers had entered other bars, carried off a robbery and shot after they had gotten the money?

"*A.* I remember one.

"*Q.* Even though they weren't provoked by anybody shooting at them, is that right?

"*A.* I couldn't say.

"*Mr. Ochs:* I say, Your Honor, this is clearly irrelevant to this particular case. It is like using another accident. It has no bearing on this case whatsoever.

"*The Court:* Overruled, but you completed the area.

"*Mr. Schwartz:* Yes, Your Honor."

B. (Questioning of Judith Moskalik.)

"*Q.* Where *[sic]* you aware at that time of any holdups in the area when the people had been shot notwithstanding the fact that they gave up?

"*A.* I had heard, yes.

"*Q.* That people had been shot notwithstanding the fact that money had been turend *[sic]* over?

"*Mr. Ochs:* Obpection *[sic]*. Is he going to testify?

"*Mr. Schwartz:* This is cross-examination. I am asking if she was aware of it. She indicated she was.

"*The Witness:* I heard about holdups, but I don't know whether money had been turned over.

"*Q. (By Mr. Schwartz)* And people had been shot?

"*A.* Yes.

"*Q.* Around closing time?

"*A.* I don't know what time."

The questioning of Judith Moskalik raises no real issue. It should be immediately noted that plaintiffs' counsel's objection to the questioning of Ms. Moskalik was not based upon the substantive grounds now put forward on appeal but directed instead at the leading form of defense counsel's question. Technically, plaintiffs' failure to specifically object to this line of questioning on the

grounds raised on appeal precludes the assignment of error, however, the same question is raised re James Fennelly, which we next consider.

The grounds advanced for plaintiffs' allegation of error with respect to the questioning of the bartender, James Fennelly, were immateriality and irrelevancy. We find neither of these elements present. The questioning was not irrelevant as it concerned the relevant issue whether or not defendant's knowledge of such unrelated incidents, *i.e.*, his state of mind prompting him to act, was shared or reasonable. As well, it was not, as the Court of Appeals concluded, immaterial hearsay as the witness was not asked about the truth of the matter but instead, as defense counsel urged, he was queried about his "state of mind". Allowance of such questioning was well within the permissible range of trial court discretion.[7]

Thus we find defense counsel's questioning on unrelated holdup incidents not to be error. The Court of Appeals is reversed on this issue.

## V. CONCLUSION

We hold that the trial court's failure to state its reasons on the record for not following the Standard Jury Instructions (Civil) 13.04 recommendation that no instruction be given on this subject is reversible error. GCR 1963, 516.6(3). The Court of Appeals is affirmed on this point.

We further hold that the trial court erred in not instructing the jury on co-plaintiff Ronald Moskalik's cause of action. However, because this error

---

[7] While unnecessary to our resolution of this issue, we note that defendant also has persuasively argued that plaintiffs should be estopped from complaining about this questioning as plaintiffs' counsel himself attempted to question Judith Moskalik about such an unrelated incident.

could not have affected the jury verdict in any way, we hold it is harmless, not prejudicial and not reversible. The Court of Appeals is reversed on this point.

We finally hold that defense counsel's questioning of witnesses regarding their knowledge of unrelated holdup incidents of a similar character as the incident at bar was not reversible error.

The Court of Appeals is affirmed as to the first issue and reversed as to the other two issues. The trial court is reversed and we remand for new trial.

Costs to appellees.

T. M. KAVANAGH, C. J., and SWAINSON, J., concurred with WILLIAMS, J.