PEOPLE v GIRARD

Docket No. 77-106. Submitted November 15, 1979, at Detroit.—Decided April 3, 1980.

David P. Girard was convicted of second-degree murder, Wayne Circuit Court, John H. Hausner, J. Defendant appeals, alleging that the trial court erred in its instructions to the jury on the issue of insanity. The instructions as given were based on the common law rather than on the statutory provisions defining insanity as a defense to a criminal act. *Held:*

1. The standards for a finding of legal insanity under the common-law rule and the statute are not sufficiently similar to allow a trial court to instruct a jury under the common-law rule.

2. The instructions as given erroneously defined legal insanity and confused the concepts of insanity and mental illness. The confusion was sufficient to preclude a finding of harmless error.

Reversed and remanded.

1. CRIMINAL LAW — DEFENSES — INSANITY — INSTRUCTIONS TO JURY — STATUTES.

A trial court is required to instruct the jury on the definition of legal insanity before any testimony is presented on that issue where a defendant has expressed the intention of raising an insanity defense (MCL 768.29a[1]; MSA 28.1052[1][1]).

2. CRIMINAL LAW — DEFENSES — INSANITY — INSTRUCTIONS TO JURY — COMMON LAW RULE — STATUTES.

The standard for finding a defendant legally insane under the common-law rule is not sufficiently similar to the standard as formulated by statute to allow a trial court to instruct a jury

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 45, 53.
   75 Am Jur 2d, Trial §§ 738, 739.
[2] 21 Am Jur 2d, Criminal Law § 45 *et seq.*
   75 Am Jur 2d, Trial § 742.
[3] 21 Am Jur 2d, Criminal Law § 31 *et seq.*
   75 Am Jur 2d, Trial § 738 *et seq.*

under the common-law rule rather than pursuant to statute (MCL 768.21a[1]; MSA 28.1044[1][1]).

3. CRIMINAL LAW — DEFENSES — INSANITY — MENTAL ILLNESS —
     INSTRUCTIONS TO JURY — STATUTES.
   The statutory definitions of mental illness and insanity are not
     the same and a criminal defendant may not be found insane
     without a finding of mental illness; a trial court's jury instruc-
     tions which erroneously defined legal insanity and confused the
     concepts of insanity and mental illness require that a defen-
     dant's conviction be reversed (MCL 330.1400a, 330.1500[g];
     MSA 14.800[400a], 14.800[500][g]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate Defender, for defendant on appeal.

Before: BRONSON, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

PER CURIAM. defendant was convicted. after a jury trial of second-degree murder, MCL 750.317; MSA 28.549, in the stabbing death of Lloyd Adams. He was sentenced to a prison term of from 40 to 60 years and now appeals by right.

Defendant did not deny the killing, but relied at trial on an insanity defense. The principal issue on appeal is whether the trial court erred in its insanity instructions. The instructions given appear to have been drawn from the common law of Michigan, despite the fact that effective prior to the instant case the Legislature had undertaken to codify the Michigan law on insanity in a manner at least facially distinguishable from the common

---

* Circuit judge, sitting on the Court of Appeals by assignment.

law.[1] We must determine whether the differences between the old and new standards for measuring criminal responsibility are significant enough to warrant reversal in the instant case.

When defendant has expressed the intention of raising an insanity defense, the trial court is required to instruct the jury on the definition of legal insanity before any testimony is presented on that issue. MCL 768.29a(1); MSA 28.1052(1)(1), *People v Mikulin,* 84 Mich App 705; 270 NW2d 500 (1978).[2] The statute defining legal insanity states:

"A person is legally insane if, as a result of mental illness as defined in section 400a of Act No. 258 of the Public Acts of 1974, being section 330.1400a of the Michigan Compiled Laws, or as a result of mental retardation as defined in section 500(g) of Act No. 258 of the Public Acts of 1974, being section 300.1500 of the Michigan Compiled Laws, that person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." MCL 768.21a(1); MSA 28.1044(1)(1).

Additionally, the trial court is required to instruct at the conclusion of the trial (1) that the jury is to consider separately the issues of the presence or absence of mental illness and the presence or absence of legal insanity, and (2) on the possible verdicts of guilty, guilty but mentally ill, not

---

[1] 1975 PA 179; 1975 PA 180.

[2] The statute states:

"If the defendant asserts a defense of insanity in a criminal action which is tried before a jury, the judge shall, before testimony is presented on that issue, instruct the jury on the law as contained in sections 400a [mental illness, MCL 330.1400a; MSA 14.800(400a)] and 500(g) [mental retardation, MCL 330.1500(g); MSA 14.800(500)(g)] of Act No. 258 of the Public Acts of 1974 and in section 21a [legal insanity, MCL 768.21a; MSA 28.1044(1)] of chapter 8 of this act."

Instructions on mental illness and mental retardation are required because under the statute legal insanity must result from one or the other.

guilty by reason of insanity, and not guilty. MCL 768.29a(2); MSA 28.1052(1)(2). If the jury were to find a defendant mentally ill, it could find him not guilty, guilty but mentally ill, or, if the mental illness resulted in the defendant's lacking substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, not guilty by reason of insanity.

The Michigan common law has long recognized the defense of insanity, although there was initially some contradiction as to the applicable standard. See *People v Garbutt,* 17 Mich 9 (1868), *People v Finley,* 38 Mich 482 (1878), *People v Durfee,* 62 Mich 487; 29 NW 109 (1886). The *Durfee* rule prevailed, and was reaffirmed by the Supreme Court shortly before the Legislature's codification of the insanity defense in *People v Martin,* 386 Mich 407, 418; 192 NW2d 215 (1971), *cert den sub nom Lewis v Michigan,* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972). The *Martin* Court stated the common law rule as follows:

"The salient elements of the Michigan test are: 1) whether defendant knew what he was doing was right or wrong; and 2) if he did, did he have the power, the will power, to resist doing the wrongful act? The Michigan test encompasses not only a sudden overpowering, irresistible impulse but any situation or condition in which the power, 'the will power' to resist, is insufficient to restrain commission of the wrongful act." *People v Martin, supra,* 418 (footnote omitted).

The Court confessed that if it were writing "upon a clean slate" it might well adopt another of the various alternative insanity rules available, but declined to do so for several reasons including deference to the Legislature, which was considering the question at the time.

The rule reaffirmed in *Martin* is substantially the rule that has become known as the "*M'Naghten* plus irresistible impulse" test.[3] *People v Martin, supra,* 418, LaFave & Scott, Handbook on Criminal Law, § 37, pp 283-284. The rule adopted by the Legislature most closely resembles the standard promulgated by the American Law Institute as part of the Model Penal Code.[4] The similarities between the "*M'Naghten* plus irresistible impulse test" (Michigan common law) and the ALI "substantial capacity" test (Michigan statutory) have been noted, some calling the latter a "modernized version" of the former. LaFave & Scott, *supra,* § 38, p 292. While we perceive the question of whether instructions modeled after the Michigan common law will suffice under the new statutory scheme to be one of first impression, we note that this Court has in passing recognized the similarities between the old and new tests. See *People v Mangiapane,* 85 Mich App 379, 391; 271 NW2d 240 (1978), *People v Mikulin, supra,* 707.[5] See, also, commentary to CJI 7:8:03-7:8:13 at 1

---

[3] *M'Naghten's Case,* 8 Eng Rep 718 (1843).

The Court in *Martin* was quick to point out that the term "irresistible impulse" was somewhat misleading: "The Michigan test encompasses not only a sudden overpowering, irresistible impulse but any situation or condition in which the power, 'the will power' to resist, is insufficient to restrain commission of the wrongful act."

[4] "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." Model Penal Code, § 4.01(1) (1962 Proposed Official Draft).

[5] The prosecution relies on *People v Van Diver,* 79 Mich App 539; 261 NW2d 78 (1977), since it was decided after the effective date of the new insanity statutes yet stated the common law test. The principal issue in *Van Diver* was whether the trial court erred in refusing to give an insanity instruction under the facts of that case. This Court held the failure was reversible, and remanded for a new trial. We do not know why the Court stated the common law insanity test, but the precise issue involved in the instant case was not addressed in *Van Diver* and, accordingly, was not decided.

Michigan Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), P 7-143.

Despite the similarities in the way that the old and new standards approach the problem of criminal responsibility, there are substantial differences in degree between the two standards. These differences can be demonstrated by comparing the trial court's instructions with the standards found in the statutes. Prior to the start of the prosecution's case the trial court instructed the jury on insanity as required:

> "Members of the jury, the defense claimed by the defendant is not guilty by reason of insanity. That is, that he lacked criminal responsibility at the time of the alleged crime. Everyone is presumed to be sane, but once evidence of insanity is introduced, the burden rests on the People to prove sanity beyond a reasonable doubt. Should you find that the defendant committed the crime charged, you must determine whether he lacked criminal responsibility as a result of insanity at the time he committed the alleged crime.
>
> "In doing so, you must determine if the defendant was not capable of knowing that what he was doing was wrong; that is to say that he was not able to distinguish between right and wrong at the time of the crime charged.
>
> "Second, if you find he could distinguish between right and wrong, but that he did not have the power to resist the impulse to do the act by reason of mental disease or insanity, then he is not criminally responsible."

Similarly, at the conclusion of trial and prior to the jury's deliberations, the trial court again instructed on the definition of legal insanity:

> "First, as a result of mental illness or disease, did the defendant not know that what he was doing was wrong; or was the defendant unable to distinguish between

right and wrong. If you find that the defendant suffered from a mental illness or disease and at that time could not distinguish between right and wrong, you must find him not guilty by reason of lack of criminal responsibility.

"Second, if you find that he could distinguish between right and wrong but was suffering from mental illness or disease, you must further consider whether, in that situation and in his condition, the defendant had the will power to resist doing the wrongful act. If you find that he was suffering from mental illness or disease and that his will power was insufficient to keep him from committing the wrongful act, you must find him not guity by reason of lack of criminal responsibility.[6]

As can be seen, these instructions follow from the insanity test set out in *Martin.*

The most important difference between the trial court's instructions and the definition of insanity found in the statute is the degree to which the defendant must be affected by mental illness in order to qualify for the insanity defense. Under the trial court's instructions the jury must find that defendant was "not capable" of knowing his conduct was wrong or that he did "not know" what he was doing was wrong. He would have to be found to have been *"unable* to distinguish between right and wrong". Similarly, under the "irresistible impulse" portion of the instruction, the jury had to find that defendant's will power "was insufficient to keep him from committing the wrongful act" or that he "did not have the power to resist the impulse". These instructions point out one of the most frequent criticisms of the *"M'Naghten* plus irresistible impulse" test; that it is an all-or-nothing proposition. The statute, on the other hand, speaks in terms of "substantial capacity" and accordingly reduces the degree to which

---

[6] The same instructions were later re-read to the jury at its request.

defendant's mental illness must affect his ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. The trial court's instructions require that the defendant not *know* right from wrong while the statute requires only that he lack a *substantial capacity to appreciate* the wrongfulness of his conduct. The trial court's instructions require that defendant not have had the *power to resist* the act while the statute requires only the lack of a *substantial capacity to conform* his conduct to the requirements of law. We do not believe that these standards are sufficiently similar to allow the trial court to instruct under the common law rule. " 'The problem is to differentiate between the wholly non-deterrable and persons who are more or less susceptible to influence by law.' " *People v Martin, supra,* 421, quoting Wechsler, *The Criteria of Criminal Responsibility,* 22 U Chi L Rev 367, 374 (1955). The common law's all-or-nothing approach was unduly restrictive in realizing this goal. The statutory scheme recognizes that there are some who do not meet the common law test that nevertheless should not be held criminally responsible. Accordingly, the trial court's instructions on insanity were erroneous.[7]

In *People v Crawford,* 89 Mich App 30, 36; 279 NW2d 560 (1979), this Court held that the use of an erroneous insanity instruction did not require reversal. The Court reasoned that since a finding of insanity had first to be based on a finding of mental illness, and since defendant had been found guilty rather than guilty but mentally ill,

---

[7] Although no objection was raised to the trial court's insanity instructions, we find review is necessary in order to prevent manifest injustice. See *People v Hall,* 77 Mich App 456, 462; 258 NW2d 517 (1977), *lv den* 402 Mich 909 (1978). Defendant's sanity was the key issue in the instant case, and he was entitled to a properly instructed jury.

the jury must have found no mental illness and could not, as such, have found defendant insane even under proper instructions. We decline to apply this analysis to the instant case, because review of the trial court's insanity instructions reveals too much confusion between the concepts of insanity and mental illness. The new statutory scheme makes it clear that mental illness and insanity are not, as legally defined, the same thing. Insanity must be the result of mental illness (or mental retardation), but mental illness can be present without a finding of insanity. In such a case, assuming the other elements of the crime were sufficiently established by the prosecution, the proper verdict would be "guilty but mentally ill". In the instant case, the trial court sought to comply with the statute by instructing the jury on the definition of insanity at the start of the trial and before any evidence was received on the issue of defendant's sanity. MCL 768.29a(1); MSA 28.1052(1)(1).[8] As noted above, that instruction erroneously defined legal insanity. The statute also specifically requires that the trial court instruct the jury on the definition of mental illness (or, if relevant, the definition of mental retardation), but the trial court failed to do so. While a finding of mental illness is necessary to a finding of insanity, the trial court's preliminary insanity instruction only referred to mental illness once, and in that instance the instruction tended to equate it with insanity:

"Second, if you find he could distinguish between right and wrong, but that he did not have the power to resist the impulse to do the act *by reason of mental disease or insanity,* then he is not criminally responsible." (Emphasis added.)

---

[8] See note 1, *supra.*

It is critical to the *Crawford* harmless error analysis that the jury be properly instructed on the distinctions between mental illness and insanity. When the two concepts are confused, we cannot ascribe to the jury the thought process necessary to obviate the error. In its final instructions to the jury on insanity, the trial court once again confused the concepts of mental illness and insanity:

"The defense claimed by the defendant is that he is not guilty because, *as a result of insanity, that is mental illness or disease,* he lacked criminal responsibility at the time of the alleged crime." (Emphasis added.)

Nowhere in the final instructions on insanity is a definition of mental illness given. Although the trial court later defined mental illness in connection with the instructions on the verdict of "guilty but mentally ill", it was crucial that mental illness be defined in the instructions concerning insanity. The trial court's error in this regard resulted in sufficient confusion between the concepts of mental illness and insanity so as to preclude a *Crawford* harmless error analysis. Reversal is required.

We have examined the remainder of defendant's arguments, and find that none independently requires reversal. The matter is reversed and remanded for a new trial.

Reversed and remanded.