PEOPLE v GRANT

Docket No. 96686. Argued January 13, 1994 (Calendar No. 14). Decided July 12, 1994.

Andre L. Grant was convicted by a jury in the Detroit Recorder's Court, Daphne M. Curtis, J., of first-degree murder and possession of a firearm during the commission of a felony. The Court of Appeals, JANSEN, P.J., and CAVANAGH and P. D. SCHAEFER, JJ., reversed in an unpublished opinion per curiam and remanded for a new trial because of the trial court's failure to give a preliminary jury instruction on the issue of insanity (Docket No. 138577). The people appeal.

In an opinion by Justice RILEY, joined by Justices BRICKLEY, BOYLE, GRIFFIN, and MALLETT, the Supreme Court held:

A trial court's failure to give a preliminary instruction on insanity before an offer of testimony on insanity is made, as required by MCL 768.29a(1); MSA 28.1052(1)(1), does not require automatic reversal.

1. Under MCL 768.29a(1); MSA 28.1052(1)(1), if a defendant asserts a defense of insanity in a criminal action tried before a jury, the court must instruct the jury on the definitions of mental illness, mental retardation, and legal insanity immediately before the commencement of testimony, especially expert testimony. The instruction must be given in all cases and not simply when a trial court believes that it would be useful. The failure in this case to give a preliminary instruction on insanity was error regardless of the defendant's failure to request it. However, the failure does not require automatic reversal. Automatic reversal, in presuming a miscarriage of justice, would conflict with MCL 769.26; MSA 28.1096, which provides that judgments or verdicts are not to be reversed absent a miscarriage of justice. Further, proper final instructions are subject to harmless-error analysis, and there is no indication that the error involved in this case requires different treatment.

2. Under Michigan law, plain unpreserved error may not be considered for the first time on appeal unless the error could have been decisive of the outcome or unless it falls under the category of cases in which prejudice is presumed or reversal is automatic. In this case, the error involved was not decisive of the outcome. Thus, the defendant failed to establish the form of

prejudice necessary to preserve an issue that was not raised in the trial court, making it unnecessary to address the standard of reversal.

Justice LEVIN, joined by Chief Justice CAVANAGH, concurring, stated that under Michigan law an appellate court should not reverse a conviction unless it is determined that prejudicial error occurred. There is no need to incorporate into Michigan jurisprudence the holding of *United States v Olano*, 507 US —; 113 S Ct 1770; 123 L Ed 2d 508 (1993), that while the government has the burden of showing that preserved error was not prejudicial, the defendant has the burden of showing that unpreserved or forfeited error claimed to have been plain was both plain and prejudicial. This case can be adequately resolved on the basis that even if there was error, it may not have been clear or obvious, and that whether the burden is on the prosecution, because the error is deemed to have been preserved, or on the defendant, because it was not preserved, the instructional omission at issue was harmless.

The adoption of the meaning expressed in *Olano* concerning the federal plain error rule ignores the significant difference between the federal judicial power and the judicial power confided to the Michigan Supreme Court. While Congress, consistent with the federal constitution, provides federal courts of appeal through the federal plain error rule with a limited power to correct errors forfeited because not timely raised, the Michigan Constitution confides judicial power to the Supreme Court, and it is beyond the power of the Legislature to define, limit, or control the exercise of that power. Because the power of the Michigan Supreme Court is plenary, it should recognize in the Michigan Court of Appeals a wide measure of discretion in the supervision of litigation.

Reversed.

*People v Mikulin*, 84 Mich App 705; 270 NW2d 500 (1978), overruled.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training, and Appeals, for the people.

State Appellate Defender (by *Kristina Larson Dunne*) for the defendant.

RILEY, J. The issue in this case involves the question whether a trial court's failure to give a preliminary instruction before an offer of testimony on insanity, as required under MCL 768.29a(1); MSA 28.1052(1)(1), requires automatic reversal. We conclude that it does not. Moreover, we find that defendant failed to preserve the error for appellate review. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the jury's verdict.

I

Defendant was charged and thereafter convicted of first-degree murder[1] and possession of a firearm during the commission of a felony[2] following a jury trial. The trial court sentenced defendant to mandatory life without parole for the murder conviction and to a two-year term for the felony-firearm conviction.

Before trial, defendant gave notice of his intent to assert the defenses of legal insanity and diminished capacity. By order of the court, defendant's competence to waive his *Miranda*[3] rights was assessed by a clinical psychologist. Later, defendant moved the court for the appointment of an independent psychiatrist to determine his criminal responsibility and the possibility of diminished capacity at the time of the killing. Defendant asserted a combination of longstanding mental problems, which allegedly included the hearing of voices that told him what to do, and drug and alcohol abuse on the date of the killing constituted

---

[1] MCL 750.316; MSA 28.548.

[2] MCL 750.227b; MSA 28.424(2).

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

legal insanity or, at the least, a diminished capac-
ity that negated the intent element of murder.

Immediately preceding jury voir dire on the first
day of trial, the court denied defendant's motion to
suppress his confession for lack of capacity to
understand his *Miranda* rights. Next, the pros-
ecutor reminded the court that defendant had filed
a notice of insanity defense.[4] Accordingly, the

---

[4] [*Prosecutor*]: Your Honor, there is another issue that I guess
I want to see if we can clarify. The defense has filed a notice of
diminished capacity or insanity. He has been evaluated by the
clinic, I understand there is no expert witness that can testify
for the defense at this time. Mr. Kincaid wasn't sure if his
client would take the stand somehow raise it, therefore, I have
filed a notice of rebuttal if it should come up. The law is once
the issue is joint [sic], the jury has been informed. I understand
until the People rest, that is not an issue. We can reserve those
kinds of instructions although there is some voir dire, the
defense request that area but I have no problem with it but the
instructions and issue itself is [sic] reserved until the defense,
or something we are sure we are going to do instruct [sic] the
jury from the outset.

[*Defense counsel*]: Your Honor, I need a moment, just a
moment. Your honor, in my interest, I have advised my client
that at this point I have no expert testimony to assist him in
this defense of insanity. That the state has expert testimony to
assist the state in its rebuttal of any defense of insanity. I have
also advised my client that it is possible to lay testimony to
establish some defense of insanity, however, that may not be
sufficient given the nature of the expert testimony.

*The Court:* Do I need to address the issue in the preliminary
instructions or just wait to see how the trial testimony
develops . . . ?

[*Defense counsel*]: From my conversation of my client, I think
it should be addressed. Is that correct, [defendant]?

*Defendant:* Yes.

*The Court:* Well in voir dire?

[*Defense counsel*]: Yes.

*The Court:* Well what I intend to address with respect to the
issue of insanity or diminished capacity simply tell [sic] the
jury during the course of this trial and during the course of any
trial certain defenses might be raised or may be raised. The
defense of insanity or diminished capacity might be raised. For
example, do any of you believe any time someone says that
they are, they were suffering from insanity or some mental
defect or illness that it is just an excuse and can't be true. Or
do you understand that it can be a complete defense. Some-
thing to that effect is what I would give unless either of you
have phrased it more artfully.

court incorporated this possibility in its voir dire
of the jury. After the prosecution rested its case
and the court denied a motion for directed verdict,
defense counsel indicated defendant's intent to
testify regarding the defenses of legal insanity or
diminished capacity.[5] Defendant testified to long-
term drug abuse, to hearing voices during stressful
periods, and to having ingested drugs and alcohol
on the date of the shooting.[6]

In rebuttal, the prosecutor offered the testimony
of the clinical psychologist who had conducted the
independent examination of defendant's criminal
responsibility or diminished capacity. After the
close of proofs, the court instructed the jury re-
garding intoxication as a defense to a specific
intent crime,[7] mental illness,[8] mental retardation,[9]

[Prosecutor]: Sounds like a good presentation, your Honor.
[Defense counsel]: Sounds good.

[5] The exact details of the defense were never clearly outlined.
Defense counsel stated:

> I think I should make appoint [sic] now before we go on the
> record that as I understand it, that my client we just talked
> about his sanity. In my opening statement he wishes me to
> discuss his sanity and not being insane to some extent. I don't
> know how I plan on working that in in great specificity, he
> wishes me to raise this issue. I don't have an expert to testify
> to support my client. He would be putting insanity in if he
> takes the stand comment [sic] on his sanity which he may or
> may not do. He would be putting his sanity into issue that's
> why I would be raising the point . . . .

[6] Defendant also admitted fabricating a story to tell his uncle soon
after the shooting, fearing retribution for taking crack without paying
for it, and initially lying to police the next morning until "the voice
told [him] to . . . tell them what happened . . . ."

[7] The court gave an instruction in substantial compliance with
CJI2d 6.2.

[8] MCL 330.1400a; MSA 14.800(400a) defines mental illness as "a
substantial disorder of thought or mood which significantly impairs
judgment, behavior, capacity to recognize reality, or ability to cope
with the ordinary demands of life."

[9] MCL 330.1500(h); MSA 14.800(500)(h) defines mentally retarded as

legal insanity,[10] a mixture of intoxication and mental illness or retardation as a defense,[11] and the guilty but mentally ill verdict.[12] The instructions were in substantial compliance with the applicable Michigan Criminal Jury Instructions.[13] A unanimous jury convicted defendant of first-degree murder and of illegal possession of a firearm during a felony.

"significantly subaverage general intellectual functioning that originates during the developmental period and is associated with impairment in adaptive behavior."

[10] MCL 768.21a(1); MSA 28.1044(1)(1) provides:

A person is legally insane if, as a result of mental illness as defined in [MCL 330.1400a; MSA 14.800(400a)] or as a result of mental retardation as defined in [MCL 330.1500(h); MSA 14.800(500)(h)] that person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

[11] MCL 768.21a(2); MSA 28.1044(1)(2) provides that "[a] person who is under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his alleged offense shall not thereby be deemed to have been legally insane."

Section 21a(2) has been interpreted to allow proof of insanity caused by long-term effects of drug or alcohol abuse, but the defense must focus on a mental condition caused by such abuse and not on incapacity from voluntary ingestion of drugs or alcohol immediately preceding an offense. See, e.g., *People v Chapman,* 165 Mich App 215; 418 NW2d 658 (1987); *People v Conrad,* 148 Mich App 433; 385 NW2d 277 (1986). But see *People v Savoie,* 419 Mich 118, 129-130 and n 4; 349 NW2d 139 (1984) (mere assertions that a substance abuse problem indicated legally cognizable insanity were insufficient to rebut the presumption of sanity).

[12] MCL 768.36(1); MSA 28.1059(1) provides:

If the defendant asserts a defense of insanity . . . , the defendant may be found "guilty but mentally ill" if, after trial, the trier of fact finds all of the following beyond a reasonable doubt:
(a) That the defendant is guilty of an offense.
(b) That the defendant was mentally ill at the time of the commission of that offense.
(c) That the defendant was not legally insane at the time of the commission of that offense.

[13] See CJI2d 3.9, 6.2, 7.6, 7.10, 7.11, and 7.12.

Defendant appealed his conviction on two grounds. First, he asserted that the failure to give a preliminary jury instruction on insanity was error requiring reversal. Second, he alleged error in the trial court's denial of his motion for directed verdict concerning whether he could be guilty of first-degree murder where his own confessions, the only direct evidence offered on the point, could not establish an intent to rob the decedent before the shooting.

Relying on the mandatory language of MCL 768.29a(1); MSA 28.1052(1)(1) and on *People v Mikulin,* 84 Mich App 705; 270 NW2d 500 (1978), the Court of Appeals reversed defendant's conviction because of the trial court's failure to give a preliminary jury instruction on the issue of insanity. The Court of Appeals also held that defendant's second issue did not "independently require reversal."[14] Unpublished opinion per curiam, decided May 12, 1993 (Docket No. 138577).

This Court granted the prosecutor's application for leave to appeal.[15]

II

A

MCL 768.29a(1); MSA 28.1052(1)(1) provides:

> If the defendant asserts a defense of insanity in a criminal action which is tried before a jury, *the judge shall, before testimony is presented on that issue, instruct the jury on the law* as contained in [MCL 330.1400a; MSA 14.800(400a)] and [MCL

---

[14] This holding was not pursued on appeal in this Court. Therefore, we express no opinion on this issue.

[15] 443 Mich 882 (1993).

330.1500(g); MSA 14.800(500)(g)][16] and in [MCL
768.21a; MSA 28.1044(1)] of chapter 8 of this act.
[Emphasis added.]

Clearly, this statutory language directs our
courts to instruct on the definitions of mental
illness, mental retardation, and legal insanity im-
mediately *before* the commencement of testimony
on insanity in a jury trial. See *Achtenberg v East
Lansing,* 421 Mich 765, 770; 364 NW2d 277 (1985)
("When the language of a statute is clear, courts
must apply it as written"). Furthermore, use of the
term "shall" rather than "may" indicates manda-
tory rather than discretionary action. *Browder v
Int'l Fidelity Ins Co,* 413 Mich 603, 612 and n 7;
321 NW2d 668 (1982); *Matheson v Secretary of
State,* 170 Mich App 216, 219; 428 NW2d 31 (1988).

It cannot be gainsaid that the purpose behind
MCL 768.29a(1); MSA 28.1052(1)(1) is other than to
establish the framework of an insanity defense in
the minds of the jury *before* testimony begins, in
light of the highly technical and esoteric nature of
testimony, especially expert testimony, that often
obtains in matters of insanity. The statute's clear
language evidences the purpose to ensure that the
preliminary instruction is given in all cases and
not simply when a trial court believes that it
would be useful. See *Achtenberg, Browder* and
*Matheson, supra.* Indeed, the mandatory nature of
the preliminary instruction language has already
been recognized. See *People v Cramer,* 201 Mich
App 590, 593; 507 NW2d 447 (1993); *People v
Girard,* 96 Mich App 594, 596; 293 NW2d 639
(1980); *Mikulin, supra* at 708.

Accordingly, we agree with the Court of Appeals

---

[16] The definition of mental retardation, to which the statute refers
as subsection (g), is now found in subsection (h). The statute was
amended to add a new subsection by 1986 PA 264, which altered the
numbering format.

that the failure to give the preliminary instruction on insanity was error regardless of defendant's failure to request it. In fact, the prosecutor does not argue that this did not constitute some form of error. However, whether this error required automatic reversal of defendant's conviction as the Court of Appeals held is another question.

We conclude that the failure to give a preliminary instruction on insanity does not require automatic reversal for several reasons. First, automatic reversal would come into direct conflict with MCL 769.26; MSA 28.1096, which orders that judgments or verdicts shall not be reversed absent a miscarriage of justice. Automatic reversal would presume a miscarriage of justice, and this presumption is far from evident in the terms of MCL 768.29a(1); MSA 28.1052(1)(1). Second, other important concerns such as proper *final* instructions to the jury are the subject of harmless-error analysis and are therefore *not* susceptible to automatic reversal.[17] Absent a clear legislative directive, we cannot consider the preliminary jury instruction involved here to avoid the more generalized requirement that no judgment or verdict may be reversed absent a miscarriage of justice. Third, rules of automatic reversal are disfavored. *People v Mosko,* 441

---

[17] See, e.g., *People v Johnson,* 128 Mich App 618, 622; 341 NW2d 160 (1983) (failure to properly define consent in a case involving criminal sexual conduct); *People v Peery,* 119 Mich App 207, 214; 326 NW2d 451 (1982) (an erroneous intent instruction in an armed robbery case); *People v Crawford,* 89 Mich App 30, 37; 279 NW2d 560 (1979) (erroneous instructions on insanity and involuntary intoxication). See also *People v Mosko,* 441 Mich 496; 495 NW2d 534 (1992) (failure to instruct the jury on a lesser included offense despite a request by the defendant). We are unaware of any precedent that considers a preliminary instruction on insanity any more important than a similar instruction to be given just before a jury retires for deliberation.

But cf. *Girard, supra* (an erroneous preliminary instruction on insanity and an erroneous insanity instruction after the close of proofs caused sufficient confusion so as to preclude consideration of the combination of errors as harmless).

Mich 496, 502-503; 495 NW2d 534 (1992). Finally, the error at issue in this case does not resemble cases that have historically been the subject of automatic reversal in the federal system. Thus, we are unable to discern any state or federal basis for treating errors surrounding MCL 768.29a(1); MSA 28.1052(1)(1) any differently than the myriad of trial errors subject to harmless error analysis. For these reasons, we overrule the *Mikulin* decision.

B

Guidelines for correcting trial errors are described in three places: MCL 769.26; MSA 28.1096, MCR 2.613, and MRE 103(a) and (d).[18] The specific terms differ in each source, and courts appear to have used them interchangeably. It is therefore important to determine whether there are any substantive differences in the terms as used.

MCL 769.26; MSA 28.1096 provides:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a *miscarriage of justice.* [Emphasis added.]

[18] The Court's general authority is set forth in article 6 of the 1963 Constitution. Pursuant to this authority, this Court has created certain limitations to appellate review as provided in MCR 2.613(A) and MRE 103. See Const 1963, art 6, § 4. MCL 769.26; MSA 28.1096 represents the Legislature's proclamation against reversal of trial court verdicts for minor errors. We are not called upon to determine whether this statute is a legislative usurpation of judicial discretion because the Court has developed its own standards in the court rule and the evidentiary rule that are notably similar to the statute.

Similarly, MCR 2.613(A) provides:

> An error in the admission or the exclusion of
> evidence, an error in a ruling or order, or an error
> or defect in anything done or omitted by the court
> or by the parties is not ground for granting a new
> trial, for setting aside a verdict, or for vacating,
> modifying, or otherwise disturbing a judgment or
> order, unless refusal to take this action appears to
> the court *inconsistent with substantial justice.*
> [Emphasis added.][19]

Finally MRE 103, which applies only to eviden-
tiary matters, states:

> (a) Effect of erroneous ruling. Error may not be
> predicated upon a ruling which admits or excludes
> evidence unless a *substantial right* of the party is
> affected, and
> (1) Objection. In case the ruling is one admitting
> evidence, a timely objection or motion to strike
> appears of record, stating the specific ground of
> objection, if the specific ground was not apparent
> from the context; or,
> (2) Offer of proof. In case the ruling is one
> excluding evidence, the substance of the evidence
> was made known to the court by offer or was
> apparent from the context within which questions
> were asked.
>
> *     *     *
>
> (d) Plain error. Nothing in this rule precludes
> taking notice of plain errors affecting *substantial*

---

[19] Technically, this court rule governs a trial court's own review of
its orders or judgments for correction of error. There is no similar
court rule in chapter six of the court rules, which concerns criminal
procedure generally, nor is one found in chapter seven on appellate
rules. However, MCR 2.613(A) is generally accepted as the appellate
standard. 3 Martin, Dean & Webster, Michigan Court Rules Practice
(3d ed), p 571. See, e.g., *Henson v Veterans Cab Co of Flint,* 384 Mich
486, 494; 185 NW2d 383 (1971).

*rights* although they were not brought to the attention of the trial court. [Emphasis added.][20]

Clearly, only MRE 103 specifically addresses the concept of issue preservation. However, the courts of this state have long recognized the importance of preserving issues for the purpose of appellate review. As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances. See, e.g., *Napier v Jacobs,* 429 Mich 222, 235; 414 NW2d 862 (1987) (failure to raise a claim of insufficiency of the evidence); *Moskalik v Dunn,* 392 Mich 583, 592; 221 NW2d 313 (1974) (failure to object to an erroneous jury instruction); *People v DerMartzex,* 390 Mich 410, 416-417; 213 NW2d 97 (1973) (failure of the defendant to request a limiting instruction on admissibility of prior-acts evidence); *People v Farmer,* 380 Mich 198, 208; 156 NW2d 504 (1968) (failure to raise the issue of the involuntariness of a confession). Indeed, the United States Supreme Court has recognized a state's right to develop procedural rules that lead to issue forfeiture even where the procedural rules implicate constitutional protections if the rules serve a legitimate

---

[20] The Michigan rule is borrowed word for word from FRE 103.

The federal courts also have at least two other harmless error rules. FR Crim P 52 provides:

(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

In addition, 28 USC 2111 provides that "[o]n the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record *without regard to errors or defects which do not affect the substantial rights of the parties.*" (Emphasis added.)

state interest. *Henry v Mississippi,* 379 US 443; 85
S Ct 564; 13 L Ed 2d 408 (1965).[21]

As alluded to previously, this preservation rule
is not without exceptions. For example, appellate
courts will consider claims of constitutional error
for the first time on appeal when the alleged error
could have been decisive of the outcome. See, e.g.,
*People v Degraffenreid,* 19 Mich App 702, 716; 173
NW2d 317 (1969); *People v Merchant,* 86 Mich App
355, 358; 272 NW2d 656 (1978); *People v Catey,*
135 Mich App 714, 722; 356 NW2d 241 (1984);
*People v Bushard,* 444 Mich 384, 439; 508 NW2d
745 (1993) (opinion of BRICKLEY, J.). However, the
instant case does not involve a constitutional
right. Rather, it is concerned with the violation of
a statutory provision requiring a trial court to give
a preliminary instruction to the jury immediately
preceding the submission of insanity testimony.
See MCL 768.29a(1); MSA 28.1052(1)(1). We now
turn to the questions whether the unpreserved,
nonconstitutional plain error in this case may
nonetheless be considered as an exception to the
preservation rule, and if so, whether reversal is
required.

C

The federal courts' approach to nonconstitu-
tional plain error, especially in regard to the
subject of issue preservation, is highly instructive.
A recent pronouncement of the federal standard
for unpreserved, nonconstitutional error is found
in *United States v Olano,* 507 US —; 113 S Ct

[21] In *Henry,* the United States Supreme Court upheld a Mississippi
court rule requiring contemporaneous objection to the admission of
evidence, alleged to have been illegally seized in violation of the
Fourth Amendment, in order to prevent forfeiture of the argument
for purposes of appeal. Such rules of trial procedure that could affect
federal constitutional rights, of course, must serve a legitimate state
interest in order to withstand a challenge to their validity. *Id.* at 447.

1770; 123 L Ed 2d 508, 519-520 (1993).[22] In *Olano,*
the majority distinguished FR Crim P 52(a), re-
garding preserved harmless error, from rule 52(b),
plain, unpreserved error.[23]

> When the defendant has made a timely objec-
> tion to an error and Rule 52(a) applies, the Court
> of Appeals normally engages in a specific analysis
> of the District Court record—a so-called "harmless
> error" inquiry—to determine whether the error
> was prejudicial. *Rule 52(b) normally requires the
> same kind of inquiry, with one important differ-
> ence: It is the defendant rather than the Govern-
> ment who bears the burden of persuasion with
> respect to prejudice. In most cases, the Court of
> Appeals cannot correct the forfeited error unless
> the defendant shows that the error was prejudi-
> cial.* [*Id.,* 123 L Ed 2d 519-520. Emphasis added.]

On the issue whether a specific, unpreserved,
nonconstitutional plain error could be addressed
by an appellate court in light of possible forfeiture,
the *Olano* Court developed a three-step test.

> The first limitation on appellate authority under
> Rule 52(b) [plain, unpreserved error] is that there
> indeed be an "error." Deviation from a legal rule
> is "error" unless the rule has been waived.
>
> *          *          *
>
> The second limitation on appellate authority

---

[22] The facts in *Olano* involve permitting alternate jurors who were
properly dismissed at the close of proofs to remain with the jury
during deliberations in contravention of FR Crim P 24(c). The basis of
the error in *Olano* was therefore statutory rather than constitutional
in nature.

[23] See also *United States v Caputo,* 978 F2d 972, 974 (CA 7, 1992).
We also acknowledge the possible existence of a subcategory in this
context, to wit: unpreserved error that is not plain. Under these facts,
the failure to give the preliminary jury instruction despite the man-
date of MCL 768.29a(1); MSA 28.1052(1)(1) clearly constitutes plain
error. Accordingly, we leave for the appropriate case a discussion of
this issue.

under Rule 52(b) is that the error be "plain."
"Plain" is synonymous with "clear" or, equiva-
lently, "obvious."

\* \* \*

The third and final limitation on appellate
authority . . . is that the plain error "affec[t] sub-
stantial rights." This is the same language em-
ployed in Rule 52(a), and *in most cases it means
that the error must have been prejudicial: It must
have affected the outcome of the . . . proceedings.*
[*Id.,* 123 L Ed 2d 518-519. Emphasis added; cita-
tions omitted.][24]

The *Olano* majority concluded that the presence
of alternate jurors did not affect substantial rights
*independent* of any prejudicial effect and that
there was neither a specific showing of prejudice
nor a reason to presume any prejudice. *Id.,* 123 L
Ed 2d 521-522. Thus, the defendant's claim was
held to have been forfeited, which prevented the
need for a determination whether reversal was
required. Moreover, *Olano* clearly placed the bur-
den of proving the prejudice of a plain forfeited
error on the appealing party because the grant of
relief under FR Crim P 52(b) is permissive rather
than mandatory. See *id.,* 123 L Ed 2d 520.[25] Pre-
suming that the test for avoiding forfeiture is met,
the *Olano* majority provided a separate test for
reversal: a federal appellate court may reverse a
plain forfeited error (1) where a miscarriage of
justice would result because the defendant is actu-

[24] In *Olano,* the majority recognized the possibility of a special
category of forfeited errors that could be corrected regardless of
prejudicial effect, i.e., their effect on the outcome. *Olano, supra,* 123 L
Ed 2d 520. However, the *Olano* majority did not fully address the
issue.

We are convinced that the types of cases that require automatic
reversal, or in which prejudice would be presumed, are not implicated
under these facts, and leave for another time their consideration.

[25] See also *People v Johnson,* 427 Mich 98, 115, n 14; 398 NW2d 219
(1986) (opinion of BOYLE, J.).

ally innocent or (2) if the error "seriously affects" the fairness, integrity, or public reputation of judicial proceedings. *Id.*, 123 L Ed 2d 521. It is important to note that the specific language of the federal rules themselves, and of the *Olano* majority's formulation from earlier precedent, make no distinction between constitutional and nonconstitutional error. Accordingly, we conclude that it is the forfeiture aspect and not the actual constitutional status that drives the federal standard.[26]

### D

The rationale underlying the distinction between preserved and unpreserved error is strongly supported by history as well as by policy. At the beginning of this century, legislative reformers around the country advocated the adoption of the harmless error doctrine in response to an ever-increasing number of reversals in criminal cases on the basis of perceived minor errors occurring at trial.[27] Many years ago, Dean Pound stated that "[n]othing is so subversive of the real purposes of legal procedure as individual vested rights in procedural errors . . . ."[28] More recently, writing for the majority in *United States v Mechanik*, 475 US 66, 72; 106 S Ct 938; 89 L Ed 2d 50 (1986), Justice Rehnquist stated:

---

[26] We find it interesting that the *Olano* Court utilized FR Crim P 52(a) and (b) rather than 28 USC 2111. Theoretically, 28 USC 2111 would also be applicable to the case because it is found in chapter 133 of the code, which contains rules that specifically apply to *review* cases. However, 28 USC 2111 does not contain the same clear dichotomy between preserved and plain errors as is found in the criminal procedural rules. Rather, it forbids appellate reversal "without regard to errors or defects which do not affect the substantial rights of the parties." Clearly, the procedural rule provides a stronger semantic basis for the decision reached by the majority.

[27] For a history of the harmless error doctrine, see, generally, 3 LaFave & Israel, Criminal Procedure, § 26.6.

[28] Pound, *The canons of procedural reform*, 12 ABA J 541, 543 (1926).

The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences. The "[p]assage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible." Thus, while reversal "may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution," and thereby "cost the society the right to punish admitted offenders." [Citations omitted.]

A forfeiture rule, then, serves the important " 'need to encourage all trial participants to seek a fair and accurate trial the first time around . . . .' " *United States v Young,* 470 US 1, 15; 105 S Ct 1038; 84 L Ed 2d 1 (1985), quoting *United States v Frady,* 456 US 152, 163; 102 S Ct 1584; 71 L Ed 2d 816 (1982).[29] See also *Michigan v Tucker,* 417 US 433, 446; 94 S Ct 2357; 41 L Ed 2d 182 (1974) ("[T]he law does not require that a defendant receive a perfect trial, only a fair one"). Accordingly, the United States Supreme Court has recognized the importance of an incentive for criminal defendants to raise objections at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights. Failure to timely raise error thus requires defendants to

---

[29] See also *Yakus v United States,* 321 US 414, 444; 64 S Ct 660; 88 L Ed 834 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it").

establish prejudice in order to avoid the forfeiture of an issue.[30]

We now turn to an analysis of the appropriate state standard for assessment of unpreserved, nonconstitutional plain error.

## III

Review of state law on the issue of harmless error leads us to the conclusion that the distinction between issue preservation and harmless error has not been clearly defined.[31] We are persuaded that *Olano,* which first requires assessing the merits of an issue presented for the first time on appeal, is instructive in this regard. As in *Olano,* in this case there was error and it was plain, to wit: the violation of the statute mandating that a preliminary jury instruction on insanity be given before testimony on insanity. Although defendant failed to properly request the instruction, the language of MCL 768.29a(1); MSA 28.1052(1)(1) does not require a defendant to make a specific request. The question then becomes whether the error affected defendant's substantial rights.

The *Olano* majority defined the term " 'affect[ing] substantial rights' " as an error that was "prejudicial: It must have affected the out-

---

[30] Except, of course, in the class of cases in which prejudice is presumed. See n 24.

[31] The requirement of timely objection to trial errors in order to preserve an issue for appellate review is well established in Michigan jurisprudence. For example, in *Moskalik, supra* at 592, the majority stated:

The requirement of a timely objection is not an arbitrary one. Its purpose is to avoid improper instruction and, if perchance an improper instruction which can be corrected has been given, to facilitate its correction before verdict, thereby avoiding costly new trials.

come of the . . . proceedings." *Olano, supra,* 123 L
Ed 2d 519. We believe that the proper interpreta-
tion of the term "prejudice" in the context of issue
preservation for plain error may be equated with
the longstanding state precedent of outcome deter-
mination. See *Degraffenreid, Catey,* and *Merchant,
supra.* In other words, a plain, *unpreserved* error
may not be considered by an appellate court for
the first time on appeal unless the error could
have been decisive of the outcome or unless it falls
under the category of cases, yet to be clearly
defined, where prejudice is presumed or reversal is
automatic. Cf. *Napier, Moskalik, DerMartzex,* and
*Farmer, supra.* Under the facts of this case, we are
persuaded that the error involved here was not
decisive of the outcome.

Although our review of the facts on the record
indicates that defense counsel raised the matter of
an insanity defense before voir dire of the jury, no
reference was made to MCL 768.29a(1); MSA
28.1052(1)(1) and its requirement of an instruction
to be given immediately before expert testimony
on insanity. Thus, the error was unpreserved. In
addition, the trial court asked jurors during voir
dire whether they could conceptualize the nature
of the insanity defense and the fact that, if suc-
cessful, it would support a verdict of not guilty.
Moreover, the jury instructions given at the con-
clusion of proofs were straight from an instruction
manual and therefore presented the appropriate
standards. Finally, the only witnesses to testify
regarding the issue of insanity were one expert
witness and defendant. Because we are not con-
vinced that the error in this case led to significant
confusion regarding an insanity defense, we con-
clude that the error was not decisive of the out-
come. Thus, defendant failed to establish the form
of prejudice necessary to preserve an issue that

was not raised before the trial court. Accordingly, it is unnecessary to address the standard of reversal in this case of unpreserved, plain error.

The Court of Appeals decision is reversed and the jury verdict reinstated.

BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

LEVIN, J. I concur in the result of the majority opinion, and join in part in the opinion.[1]

I

The majority adverts to a distinction between constitutional error and nonconstitutional error, and to a distinction between preserved and unpreserved error, now dubbed forfeited error, and then expounds on the recent decision of the United States Supreme Court in *United States v Olano,* 507 US —; 113 S Ct 1770; 123 L Ed 2d 508, 519-520 (1993), concerning unpreserved, forfeited, so-called "plain" nonconstitutional error, and where the Court said that, while the government has the burden of showing that preserved error was not prejudicial, the defendant has the burden of showing that unpreserved or forfeited error claimed to have been plain was both plain and prejudicial.

Justice Kennedy in a separate concurring opinion expressed his belief that had there been a specific objection, to allowing alternate jurors to be present during the jury's deliberation, it would have been "most difficult for the government to show the absence of prejudice." Justice Stevens,

[1] Specifically, I join in the introductory paragraph, in part I, in so much of subpart A of part II as precedes the concluding paragraph of subpart A, and agree generally with the concluding paragraph, beginning with the words "[a]lthough our review," of part III of the majority opinion.

with whom Justices White and Blackmun concurred, said that he could not agree that "errors may be deemed to 'affect substantial rights' only when they have a prejudicial impact on a particular defendant."[2]

Justice Stevens also observed:

> The Courts of Appeals are, however, allowed a wide measure of discretion in the supervision of litigation in their respective Circuits. [Citations omitted.] Certainly, the Courts of Appeals are better positioned than we are to evaluate the need for firm enforcement of a procedural rule designed to protect the integrity of jury deliberations, and to weigh the interest in such enforcement against other relevant consideration. Because I am not persuaded that the Court of Appeals here abused its broad discretion, I would affirm its judgment. [*Id.*, 123 L Ed 2d 527.]

Michigan does not have a counterpart to FR Crim P 52(b), although the concept of plain error has been adverted to in a few opinions of this

---

[2] Justice Stevens explained:

> At least some defects bearing on the jury's deliberative function are subject to reversal regardless of whether prejudice can be shown, not only because it is so difficult to measure their effects on a jury's decision, but also because such defects "undermine the structural integrity of the criminal tribunal itself." *Vasquez v Hillery,* 474 US 254, 263-264; 106 S Ct 617; 88 L Ed 2d 598 (1986) (racial discrimination in selection of grand jury); see also *Gray v Mississippi,* 481 US 648, 668; 107 S Ct 2045; 95 L Ed 2d 622 (1987); *id.* at 669 (Powell, J., concurring) (improper exclusion of juror opposed to death penalty). Whether or not they harm the defendant, errors that call into question the integrity of the jury's deliberations may harm the system as a whole. In that sense, they may be said to "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v Atkinson,* 297 US 157, 160; 56 S Ct 391; 80 L Ed 555 (1936), making them candidates for reversal under Rule 52. See *United States v Young,* 470 US 1, 15; 105 S Ct 1038; 84 L Ed 2d 1 (1985) (citing *Atkinson, supra*). [*Id.*, 123 L Ed 2d 525-526.]

Court.[3] *Olano,* decided a year ago, was not adverted to in the briefs of counsel. The United States Courts of Appeals are just beginning to expound on this recent decision of the United States Supreme Court.[4]

There is no need in the instant case to incorporate *Olano* into Michigan jurisprudence. This case can be adequately resolved on the basis set forth in part III of the majority opinion, which, as set forth in the last full paragraph of part III, shows that even if there was error, it may not have been clear or obvious, and that whether the burden is on the prosecution, because the error is deemed to have been preserved, or on the defendant, because it was not preserved, the instructional omission in the instant case was harmless.

II

The adoption of the views expressed by the majority in *Olano* concerning the meaning of the federal plain error rule ignores the significant difference between the federal judicial power and the judicial power confided to this Court. As set forth in *Olano,* 123 L Ed 2d 517-518, the federal plain error rule provides "the Court of Appeals a *limited power* to correct errors that were forfeited because not timely raised in the District Court," and "the *authority created*" by that rule "is circumscribed." (Emphasis added.) The federal rule was adopted by or pursuant to the authority of the

[3] *Washburn v Lucas,* 373 Mich 610, 625-626; 130 NW2d 406 (1964); *Moskalik v Dunn,* 392 Mich 583, 592; 221 NW2d 313 (1974); *Javis v Ypsilanti Bd of Ed,* 393 Mich 689, 702, n 4; 227 NW2d 543 (1975); *Napier v Jacobs,* 429 Mich 222, 233, n 2; 414 NW2d 862 (1987). See also *People v Bushard,* 444 Mich 384, 400; 508 NW2d 745 (1993) (LEVIN, J.); see also MRE 103(d).

[4] *United States v Colon-Pagan,* 1 F3d 80 (CA 1, 1993); *United States v Montanye,* 996 F2d 190 (CA 8, 1993).

Congress. It is well established that the "Congress is free to grant or withhold the judicial power . . . ." Wright, Law of Federal Courts (4th ed), § 10, p 38.

In contrast with the federal constitution, the Michigan Constitution confides the judicial power to this Court,[5] and it is beyond the power of the Legislature to define, limit, or control the exercise of that power.

Because this Court's judicial power is plenary, it is not confined by a court rule, and certainly not by a statute. I would follow the approach suggested by Justice Stevens, and recognize in the Court of Appeals a "wide measure of discretion in the supervision of litigation . . . ." 123 L Ed 2d 527. This Court, which does not hesitate to enter peremptory orders of reversal, can correct any excessive recognition of plain error by the Court of Appeals.

CAVANAGH, C.J., concurred with LEVIN, J.

---

[5] The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house. [Const 1963, art 6, § 1.]