# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES THOMAS LOVE, also known as MAN-MAN,

      Defendant-Appellant.

UNPUBLISHED
September 10, 2015

No. 321335
Wayne Circuit Court
LC No. 13-008668-FC

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

James Thomas Love, also known as "Man-Man," appeals as of right his bench trial convictions of assault with intent to murder (AWIM)[1] and possession of a firearm during the commission of a felony (felony-firearm).[2] The trial court sentenced Love to 13 to 25 years' imprisonment for AWIM and two years' imprisonment for felony-firearm. We affirm.

This case arises from a shooting that occurred on July 24, 2013, at a gas station in Detroit. Love entered the gas station at approximately 2:00 a.m. He walked into an employees-only area hoping to charge his cell phone. A security guard, Hillery Marks, asked Love to leave the area. After a heated verbal disagreement, Love left the gas station, warning Marks that he was "about to shoot this b**** up." About three minutes later, Marks watched Love return to the gas station, this time accompanied by two men. As Love approached, he raised his gun and fired five shots into the gas station, one of which struck Marks in the head. Marks was taken to a hospital and survived the shooting.[3]

---

[1] MCL 750.83.

[2] MCL 750.227b.

[3] Love testified in his own defense. Love acknowledged being at the gas station, but denied making any threats. He also denied being at the gas station when the shooting occurred, instead claiming to have heard the shooting from approximately 2 blocks away. The trial court specifically found that Love was not credible.

-1-

Love was charged with AWIM and felony-firearm. At his preliminary examination, the district court judge orally granted Love's motion to sequester witnesses. Near the end of his testimony, Marks identified the two men that were with Love during the shooting as "Donovan" and "Anthony." Marks then testified that both men were sitting in the courtroom. Love's attorney immediately asked that the men leave the courtroom because they could be called as defense witnesses. The trial court stated that the men would be prohibited from testifying.

On the final day of Love's bench trial, testimony was halted when Anthony Pinston and Donovan Bourrage were discovered in the courtroom, again in violation of a sequestration order given at trial. Love requested that the two men be permitted to testify. The trial judge excluded Pinston's testimony based on the instant violation of the court's sequestration order and in light of Pinston's previous violation at the preliminary examination,[4] but offered to allow Bourrage's testimony because it was not absolutely clear from the preliminary examination transcript whether Bourrage was the second man identified at the preliminary examination.[5]

Love now argues that the trial court's decision to exclude Pinston's testimony violated his constitutional right to present a defense. We disagree. To preserve the issue of whether a trial court's evidentiary ruling denied defendant his constitutional right to present a defense, a defendant must raise the issue in the trial court.[6] While Love did ask to call Pinston as a witness, he did not argue that failing to allow Pinston to testify would deny him his constitutional right to present a defense. Thus, viewed as a constitutional issue, the issue is unpreserved.[7]

However, and as is discussed in detail below, Love's argument is more appropriately framed as a claim of error in the exclusion of evidence. To preserve a claim that the exclusion of evidence was erroneous, the party claiming error must make an offer of proof in the trial court, unless the substance of the excluded evidence is apparent from context.[8] Love made no offer of proof, and the substance of Pinston's testimony is not apparent from context. Thus, viewed as an evidentiary issue, Love's claim of error is likewise unpreserved.

Unpreserved claims of evidentiary and constitutional error are each subject to plain error review.[9] Under the plain-error standard, a defendant must demonstrate that (1) an error occurred,

---

[4] There is no dispute that the man identified as "Anthony" at the preliminary examination is Pinston.

[5] Bourrage chose not to take the stand after being advised by an attorney that his decision to testify could lead to his own incrimination.

[6] *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004).

[7] See *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground.").

[8] MRE 103(a)(2); *People v Grant*, 445 Mich 535, 545; 520 NW2d 123 (1994).

[9] *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

(2) the error was plain, i.e., clear or obvious, and (3) the error affected the defendant's substantial rights.[10] "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."[11] Finally, even if these requirements are met, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[12]

"A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses."[13] However, "this right is not absolute . . . ."[14] A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."[15] One such rule is MRE 615, which is designed to ensure a fair trial by preventing a witness from "coloring his testimony to conform with the testimony of another . . . ."[16] The rule permits a trial court to sequester most witnesses upon the request of either party or sua sponte, "so that they cannot hear the testimony of other witnesses . . . ."[17] Generally, three sanctions are available when a potential witness violates a sequestration order: "(1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying."[18] However, the "exclusion of a witness's testimony is an extreme remedy that should be sparingly used."[19] The proper sanction in any particular circumstance is generally a matter within the trial court's discretion.[20]

So long as a rule of evidence is not arbitrary or disproportionate to its purpose, the rule does not unconstitutionally abridge a defendant's right to present a defense.[21] Love cites a number of opinions of the United States Supreme Court finding particular evidentiary rules arbitrary or disproportionate. However, none of these cases address a rule similar in content to

---

[10] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[11] *Id*.

[12] *Id*. at 763-764 (quotation marks, brackets, and citation omitted).

[13] *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

[14] *Id*.

[15] *Id*. (quotation marks and citations omitted).

[16] *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (quotation omitted).

[17] MRE 615. Certain categories of witnesses, none of which are at issue here, are excluded from the rule.

[18] *Meconi*, 277 Mich App at 654 (quotation marks and citations omitted).

[19] *Id*.

[20] *People v Allen*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (slip op at 9).

[21] *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008).

MRE 615.[22]  Love also relies on *People v Meconi*.[23]  However, *Meconi* held only that the trial court abused its discretion when it excluded a witness, the victim, for violating a sequestration order.[24]  Moreover, Love does not argue that MRE 615 is itself disproportionate or arbitrary; rather, he argues that the trial court's choice of remedy was arbitrary in this case.  Thus, it would appear that Love's argument is not that his right to present a defense was violated, but rather, that the trial court's decision to exclude Pinston's testimony was an abuse of discretion.

Regardless of whether the issue is viewed as a constitutional issue or an evidentiary issue, Love is not entitled to relief.  There exists no record of Pinston's testimony from which we could evaluate its effect on Love's trial.  Nor does Love offer an explanation of what additional testimony Pinston could have provided.[25]  Any belief that Pinston's testimony would have been outcome-determinative is purely speculation.  Accordingly, Love cannot demonstrate prejudice, and is not entitled to relief.[26]

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

---

[22] See *Holmes v South Carolina*, 547 US 319; 126 S Ct 1727; 164 L Ed 2d 503 (2006); *Rock v Arkansas*, 483 US 44; 107 S Ct 2704; 97 L Ed 2d 37 (1987); *Crane v Kentucky*, 476 US 683; 106 S Ct 2142; 90 L Ed 2d 636 (1986); *Chambers v Mississippi*, 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973); *Washington v Texas*, 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

[23] 277 Mich App 651.

[24] *Id*. at 653-655.  Indeed, the *Meconi* Court explicitly declined to address the sole constitutional question raised, which was whether the trial court's decision violated the victim's right, under the Michigan Constitution, to be present during the trial.  *Id*. at 653-654.

[25] At best, Love states that he would have offered Pinston's testimony "in support of his alibi . . . ."  Love himself testified to his alibi, and the trial court found the alibi unbelievable.  We find it unlikely that having an additional witness testify to the same alibi would have changed the trial court's conclusion.

[26] *Carines*, 460 Mich at 763.