*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KINTE ANTWAN CONAWAY,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2025
1:04 PM

No. 367439
Wayne Circuit Court
LC No. 21-004278-01-FC

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Defendant, Kinte Antwan Conaway, appeals as of right his March 20, 2023 bench trial convictions of misdemeanor domestic violence, MCL 750.81(2), and third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration by way of force or coercion). Conaway was sentenced as a fourth-offense habitual offender, MCL 769.12, to 18 to 40 years' imprisonment for CSC-III, and 93 days in Wayne County Jail for misdemeanor domestic violence, to run concurrent with the prison sentence, with credit for three days served.

On appeal, Conaway argues his convictions should be reversed because the circuit court erred in admitting other-acts evidence during his bench trial, there was insufficient evidence to sustain his convictions, and that he is entitled to resentencing. We affirm his convictions and sentences, but remand for ministerial corrections to the presentence investigation report (PSIR) as indicated below.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of an argument between Conaway and Chantelle Jones (the victim), on or about July 8, 2020. Conaway and the victim had been dating on and off since 2013, had two children in common, and had been living together since 2016 at a house the victim purchased in Detroit. The victim testified a lot of arguments between her and Conaway were borne out of Conaway accusing her of cheating on him.

On the afternoon of July 7, 2020, Conaway and the victim got into an argument. Later that evening, the victim and her children were hungry. At around 11:30 p.m., the victim took her

children across the street to her neighbor Tina's house to try to find something to eat.[1]  Conaway said the victim and Tina were drinking together.  Because Tina was drunk, the victim drove her children and Tina to three different restaurants in the area but all were closed because of COVID-19.  When they returned home without food around 12:30 a.m. on July 8, 2020, the victim let her children into the house and helped Tina back to her house.  The victim was at Tina's house for around five minutes.

When the victim returned to her home through the front door, she saw the children at the kitchen table eating bowls of noodles Conaway prepared for them.  Conaway was sitting in a chair against the wall between the kitchen and the stairs.  Conaway got up, grabbed the victim's keys and phone off the dining room table, and dragged the victim by her wrists across the street to bang on Tina's door.  When Tina answered the door, Conaway said: "Wasn't y'all just talking about me[?]"  Tina was very intoxicated and appeared to have no idea what Conaway was talking about.  Conaway mumbled something incomprehensible, then dragged the victim back across the street by her wrist through the front door of the house.

When they were back in the house, Conaway grabbed the victim by her hair with one hand, still holding her wrist with his other hand.  He pulled the victim into a bedroom and threw her into the bed frame.  The victim's back hit the bed frame, and she bounced off the bed and landed on her back on the floor of the bedroom.  The victim already had a herniated disc in her back and she testified that her spinal cord twisted, causing her discomfort.  After this, Conaway grabbed the victim off the bedroom floor and pulled her by her hair out to the backyard through the back door.  In the backyard:

> He takes me over to the table.  He starts pulling down my shorts and panties.  He turns me around facing him.  He pulls out his penis and he tries to penetrate me.  He couldn't get hard.  I started screaming that [the children] were watching out the window and then he kind of pulls my pants [back up] then he drags me further into the alley where his truck is.

The victim was resisting Conaway.  When they were in the alley behind the house, Conaway opened the passenger-side door and threw the victim into the passenger seat facing forward.  Once inside the truck, Conaway's hand moved from the victim's hair to around her neck.  "[Conaway] pulls down his pants again.  This time he get [sic] on top of me.  I'm trying to scream stop, stop, don't, stop.  He told me to shut the fuck up.  He grabbed my throat and, once again, he tried to insert his penis inside me."  The victim testified that Conaway's penis touched her vaginal opening.  It went "[a] little bit through the lips but then it would just fall out."  This went on for "maybe two to four minutes."

As the victim was screaming, Conaway stuck his thumb in the victim's mouth, grabbing the rest of her face with one hand and her neck with his other hand.  Conaway lifted the victim by her head and neck and threw her out of the truck onto the ground.  Outside the truck, Conaway pinned the victim to the ground with his body, one hand still holding her face down and the other choking her around her neck.  The victim was trying to scream and resist, but she was struggling

---

[1] Tina's last name was not placed on the record.

to breathe. She believes she lost consciousness because "everything went black," and she lost feeling in her body.

After the victim stopped struggling against Conaway, he picked her up off the ground, put his arm around her waist and helped her back into the kitchen through the back door where the children were still standing. Conaway instructed the victim to clean her face in the bathroom. In the bathroom mirror, the victim saw the extent of her injuries. She testified she was "bleeding everywhere"; blood was streaming from her head and left cheek because Conaway pulled out her braids and his nail prints broke the skin in her cheek. After she rinsed off, Conaway said, "Let['s] go lay down." He helped the victim up the stairs into their shared bedroom. Here, Conaway began kissing the victim, taking off her clothes, and performed oral sex on her. Conaway then got on top of the victim and had sex with her. The victim did not resist because she "was scared to death. . . . Because he had just literally strangled me and [dragged] me like a dog."

The victim fell asleep shortly after this. When she woke up, she noticed Conaway in the backyard. He still had the victim's car keys. The victim grabbed her phone and fled in her nephew's car which was parked outside the house.[2] She left the children with Conaway. The victim drove to a cousin's house, then walked to the emergency room at Henry Ford Hospital. She spoke with an initial intake person in the emergency room and explained what happened to her. The victim waited at the hospital for an hour and a half, but the emergency room was crowded because of the COVID-19 pandemic, and she was not able to see a doctor.

The victim called her niece, Ericka Williams, to pick her up from the emergency room. The victim stayed with Williams for about one month. The victim made a police report with the Detroit Police Department (DPD). She told a DPD employee exactly what happened to her, but was never instructed to complete a rape kit or DNA swabs. The victim also filed a personal protection order (PPO) against Conaway. Williams, who was a process server, served Conaway the PPO on July 10, 2020. On August 7, 2020, the victim spoke to DPD Detective Willhelm,[3] and went to DPD headquarters to provide a written statement to law enforcement. The victim also provided one photograph of her bruised neck and shoulder to the prosecution. The photograph was taken "a few days" after the July 8, 2020 incident and was admitted at trial as Exhibit 2. The victim testified she took other photographs of the scrape marks on her back from when Conaway threw her out of his truck, and of the missing braids in her scalp, but Conaway deleted the photographs from her phone at some point.

The victim did not speak to Conaway or have contact with the children during this time, but informed Conaway in August 2020 that she filed a police report regarding the July 8, 2020 incident. Despite having sole physical custody of the children she shared with Conaway, he did not return the children to the victim until March 2021. The victim struggled with alcohol addiction while living away from Conaway and the children but was clean by the time of trial. The victim never resumed living with Conaway after July 8, 2020.

---

[2] The nephew's name was not placed on the record, nor was he with the victim when she fled.

[3] Detective Willhelm's first name was not placed on the record.

Conaway was arrested on March 15, 2021, and charged with first-degree criminal sexual conduct (CSC-I) (sexual penetration during commission of a felony), MCL 750.520b(1)(c) (Count 1), CSC-III (Count 2), assault with intent to do great bodily harm less than murder or by strangulation, MCL 750.84 (Count 3), and misdemeanor domestic violence (Count 4).

## A.  OTHER-ACTS EVIDENCE OF DOMESTIC VIOLENCE & BENCH TRIAL

Before trial, the prosecution filed a "768 notice"[4] of intent to introduce bad-acts evidence of prior incidents of domestic violence between Conaway and the victim.  The trial court heard arguments on this issue at a pretrial hearing on March 10, 2023.  The notice detailed three specific instances of domestic violence between Conaway and the victim on June 27, 2018, April 4, 2019, and October 14, 2020.  In each instance, the victim made a police report to document what happened.  The notice also detailed a fourth incident on October 29, 2022, where Conaway allegedly engaged in domestic violence with a different complainant and that was reported to the police, but the prosecutor did not ask questions on this matter at trial.  All police reports of domestic violence were attached as exhibits to the notice, and the prosecution argued the prior instances of domestic violence were similar in nature to the charges Conaway faced.

Defense counsel objected to the admission of these prior bad acts, arguing individual acts of domestic violence did not prove Conaway acted in conformity therewith, the evidence was more prejudicial than probative, and the acts were misdemeanor charges that were never corroborated and ultimately dismissed.  Defense counsel stated if the prosecution were to read off allegations, this would violate Conaway's Confrontation Clause rights under the Sixth Amendment, US Const, Am VI, and asked the trial court to limit the prosecution to present proofs of alleged domestic violence, including any DNA evidence, medical records, or corroborating witnesses.  Regarding the confrontation clause argument, the trial court agreed with defense counsel that the prosecution could not read off allegations, and was required to prove each allegation of domestic violence at trial, giving defense counsel an opportunity to rebut the evidence.  However, the trial court determined the defense failed to provide a valid reason to prohibit admission of the bad-acts evidence.  It determined this evidence was admissible, under the statutory exception to the rule against other-acts evidence for domestic violence cases, precisely because it tended to show Conaway's character.  The trial court did not explicitly engage in an MRE 403 balancing test on the record as required.

On the basis of this evidentiary ruling, Conaway waived his right to a jury trial and proceeded to a bench trial on March 20, 2023.  At the bench trial, defense counsel asserted during opening statements that the victim's general motivation to lie, whether it be about the events giving rise to the present charges or past incidences of domestic violence, was because there was a pending Children's Protective Servicers (CPS) case against the victim.[5]  He maintained that the

---

[4] Referring to either MCL 768.27b or MCL 768.27c, which is not specified on the record.

[5] The victim testified the CPS case against her had closed and her children were never removed from her custody.  There is no information on the record about the details of the CPS case.  At trial, the prosecution introduced custody orders from 2016 and 2017 as exhibits proving the victim had sole physical custody of the children, but shared joint legal custody with Conaway.

victim's testimony was unsubstantiated by DNA or any witnesses. However, he did not formally place an objection on the record as was done at the motion hearing on March 10, 2023. The victim was then called to testify about the events of July 7 and July 8, 2020, and the months that followed. The prosecution then introduced other-acts evidence. The victim was handed a police report to refresh her recollection of an incident on June 27, 2018, when the victim called the police on Conaway after he choked her. After this, the victim obtained a PPO against Conaway. The victim was handed another police report to refresh her recollection of an incident from a time the two were not living together, and which she had gone to the DPD to report. She testified about the April 4, 2019 incident at trial:

> So I was asleep. I woke up. [Conaway] was sitting in the chair next to my bed looking at me. I don't know how he got into my house. He had my phone. He started arguing with me. I sat up on the bed. I can't recall exactly what he said but I went to get up to try to leave out the room. He grabbed me by my throat, threw me against the wall and then he screamed some more obscenities and he left.

The victim did not suffer injuries from this incident, but her throat was left swollen and sore. Conaway appeared in the 36th District Court for domestic violence charges, and for violating the PPO. A pretrial date was set but the charges were dismissed and the PPO was withdrawn because the victim failed to appear.

Finally, the victim testified about an incident that occurred on October 14, 2020, after the incident in this case:

> [Conaway] said that he would let me get the kids, our two sons, for a weekend if I came out and talked to him. I met [Conaway] at a motorcycle club. He got in the truck that I was driving and instead of him having a conversation he just became irate and he was mad that I pressed—that I was going to the police and that I wouldn't go back to the house and he just started cussing me out . . . .

Conaway was angry that the victim would not return to the house. He tried to grab the victim by the throat, and then began taking off his trench coat. The victim grabbed the keys to the truck, ran back to the motorcycle club, and asked someone to call the police. The police arrived at the scene and the victim made a police report.

After the prosecution and the defense rested, the trial court gave its ruling:

> [T]he crux of the dispute is did this incident happen at all; that's what it's about[.] Well, it certainly did. She didn't make this up. Her account is too elaborate and the Court had the opportunity to observe her demeanor, her attitude, the inconsistencies or not in her testimony. She did not make this up. It's either true or it's a complete fabrication. It's not a complete fabrication.

The trial court found Conaway guilty of one count of CSC-III because he engaged in sexual penetration using force on two occasions—first in the alley where he partially penetrated the victim and again in the bedroom, which the trial court found not to be consensual because the victim's fear inhibited her ability to physically resist Conaway. The trial court also found Conaway guilty of misdemeanor domestic violence.

## B. SENTENCING

At Conaway's sentencing hearing, the victim read a victim impact statement. She stated:

I'm petrified when I'm alone, as I'm vulnerable[,] so many memories of so much pain evade my thoughts, my dreams. I'm stuck in a nightmare with no peace, no rest, bruises healed, but the pain and terror hasn't eased. Three years has passed and my mind replays the dreadful events as though it happened today. I have two therapists, a psychiatrist. I attend AA by choice. As a part of my sobriety program, I attend NA meetings and STD groups, and still I struggle with the reality of knowing I was beat into submission and subsequently surrendered the life built. Terror ran me from my home that my children, I raised with love, now know pain, separation and homelessness.

The victim stated she was being treated for complex PTSD, and is prescribed medicine to block nightmares and flashbacks to help her sleep. "The moment there is a lapse of medicine, I'm right back under his fists. Every time I close my eyes, I still feel the pain of his blows."

At sentencing, the prosecution asked the trial court to correct offense variable (OV) 19 to be scored at zero points. Defense counsel agreed. The prosecution also asked that OV 10 be scored at 10 points instead of zero points and defense counsel did not object, however the PSIR does not reflect this change. Conaway was sentenced as mentioned above. This appeal followed.

## II. OTHER-ACTS EVIDENCE

Conaway first argues the trial court erred in admitting other-acts evidence of domestic violence at trial.

### A. ISSUE PRESERVATION AND STANDARDS OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001). Because defense counsel did not object to the introduction of other-acts evidence at trial, this evidentiary issue is technically unpreserved for appellate review. And defense counsel raised a constitutional issue in the lower court which he does not raise again on appeal. The only objections raised in the lower court that are consistent with objections raised on appeal are that the other-acts evidence against Conaway is more prejudicial than probative under MRE 403, and the prior allegations of domestic violence against him were unsubstantiated.

But still, "issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Here, defense counsel raised his objections to the prosecution's notice to introduce other-acts evidence at the pretrial hearing on March 10, 2023. Because this case proceeded to a bench trial where the trier of fact already heard defense counsel's objections to the introduction of other-acts evidence, we will treat this evidentiary issue, specifically the arguments that the evidence is more prejudicial than probative and is unsubstantiated, as preserved. We will otherwise treat arguments regarding (1) the prosecution's alleged failure to provide timely notice

of the introduction of other-acts evidence, (2) the assertion that the trial court never evaluated the statements for their trustworthiness under MCL 768.27c(2), and (3) the lack of proximity of the other acts of alleged domestic violence to this incident, as unpreserved because they are raised for the first time on appeal. *Aldrich*, 246 Mich App at 116; *Grant*, 445 Mich at 546.

Unpreserved nonconstitutional issues, such as the erroneous admission of evidence,[6] are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish plain error, a defendant must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *Id.* at 763-764. The third requirement generally requires a showing of prejudice, meaning that the error affected the outcome of the lower court proceedings. *Id.* Regarding preserved evidentiary issues, "[t]his Court reviews a trial court's decision to admit evidence for an abuse of discretion." *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996) (citation omitted). "The abuse of discretion standard involves more than just a difference of opinion." *People v Cameron*, 299 Mich App 599, 608; 806 NW2d 371 (2011). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). See also MCL 769.26. "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).

## B. UNPRESERVED ISSUES – HEARSAY STATEMENTS UNDER MCL 768.27c

Beginning with the unpreserved evidentiary issues, we hold there was no plain error affecting Conaway's substantial rights.

Conaway first argues the prosecution failed to timely notify the trial court of its intent to use other-acts evidence as required under the rules of evidence. MRE 404b(3)(C) states that in criminal cases, the prosecution must provide written notice of intent to use other-acts evidence at least 14 days before trial. MCL 768.27b(2) and MCL 768.27c(2) state written notice must be provided not less than 15 days before trial. The prosecution in this case first notified the trial court of its intent to use other-acts evidence at a pretrial hearing on February 27, 2023, and was directed to file the written notice with the court within 48 hours. If the written notice was filed within 48 hours of February 27, 2023, it would have been filed by March 1, 2023.[7] The bench trial began 19 days later, on March 20, 2023. The prosecution's notice was timely and there is no plain error. *Carines*, 460 Mich 763.

Conaway next argues the alleged acts of domestic violence lacked proximity in time to this incident. Under MCL 768.27c(1)(c), a trial court may not admit a hearsay statement into evidence in domestic violence cases if the statement was made more than five years before the filing of the

---

[6] The erroneous admission of evidence is a nonconstitutional issue. *People v Whittaker*, 465 Mich 422, 426; 635 NW2d 687 (2001).

[7] This information is not reflected in the Register of Actions, however, at the hearing on the "768" notice, the parties describe a notice was filed and exhibits of police reports of prior incidents of domestic violence were attached to the notice.

current action. Here, the acts the victim testified to at trial occurred in 2018, 2019, and 2020. Conaway was arrested and charged with domestic violence in this case on March 15, 2021. Thus, any statements made in 2018, 2019, and 2020 are within the five years prescribed by the statute and are admissible in this regard. Again, there is no plain error. *Carines*, 460 Mich at 763.

Next, Conaway makes a compelling argument that that the trial court erred in admitting the other-acts evidence because the statements regarding prior acts of domestic violence did not meet the statutory criteria in MCL 768.27. As a prelude, under MRE 404b(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The Michigan Legislature provides an exception to this evidentiary rule in cases of domestic violence. Under MCL 768.27b, "in a criminal action in which the defendant is accused of an offense involving domestic violence . . . evidence of the defendant's commission of other acts of domestic violence . . . is admissible for any purpose for which it is relevant . . . ." Specifically, Conaway argues the trial court erred because it never determined that the statements in the police reports were made under circumstances that would indicate their trustworthiness. MCL 768.27c(1)(d). MCL 768.27c(2) enumerates a nonexclusive list of circumstances relevant to the issue of trustworthiness, which include:

> (a) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.

> (b) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.

> (c) Whether the statement is corroborated by evidence other than statements that are admissible only under this section.

Regarding subsection (a), there is no evidence that anything Conaway or the victim could have said was related to pending or anticipated litigation when he choked the victim on June 27, 2018. The victim testified at trial that on April 4, 2019 Conaway yelled obscenities at her and she could not remember whether Conaway said anything else. However, by the time of the April 2019 incident, the victim had filed a PPO against Conaway, so her 2019 statements to DPD may have been in contemplation of anticipated litigation regarding Conaway violating the PPO. And because the victim reported the October 14, 2020 incident after the incident that brought rise to the charges in this case, we understand the argument that the victim's report could be perceived as building a record against Conaway in anticipation of litigation. Finally, none of the statements in the police reports regarding prior instances of domestic violence were corroborated or substantiated by other eye witnesses, DNA, or medical evidence.

But again, these factors are nonexclusive, and Conaway's arguments are similar to those made by the defendant in *People v Meissner*, 294 Mich App 438; 812 NW2d 37 (2011), where the prosecution sought to introduce verbal and written statements the victim made to police officers about prior instances of domestic violence between her and the defendant. *Id*. at 443-444. The *Meissner* defendant argued on appeal, among many things, that the statements were not corroborated and the trial court was required to make factual findings regarding the three trustworthiness circumstances. *Id*. at 449. This Court held in *Meissner* that not only was the trial

court not required to make such factual findings on the record, but the defendant's "interpretation of subsection (2)(a) would require all domestic violence victims to endure the indignity of tainted trustworthiness if they took the step of reporting the charged offense to the police," and determined the trial court did not err in admitting the statements. *Id*. at 449-452.

> According to subsection (1)(e), the only statements admissible under the statute are statements made to law enforcement officers. To interpret subsection (2)(a) to impose credibility concerns on victims' police statements would be to ignore subsection (1)(e), which renders those same statements admissible. This Court cannot interpret subsection (2)(a) to require trial courts to discount the credibility of the very statements the statute was designed to admit. *Id*.

*Meissner* goes on to limit subsection (2)(a) "to litigation in which the declarant could gain a property, financial, or similar advantage, such as divorce, child custody, or tort litigation . . . ." *Meissner*, 294 Mich App at 450.

In this case, defense counsel asserted in his opening statement that the victim generally had motivation to lie because a CPS case had been opened against her. But whether the victim stood to gain custody of her children through this case is purely speculative considering there is nothing on the record to indicate when a CPS case was opened against her and whether it was resolved before trial. The victim testified the children had been in her custody since March 2021, after Conaway allowed her to see them, and CPS never removed them from her custody. Further, at trial, the police reports themselves were never admitted into evidence. The victim was presented with the police reports to refresh her recollection of the prior instances of domestic violence, and then testified regarding their contents. Therefore, we hold the trial court did not plainly err with regard to MCL 768.27c. *Carines*, 460 Mich at 763.

## C. PRESERVED EVIDENTIARY ISSUES – PRIOR BAD ACTS UNDER MCL 768.27b

Conaway argues that the probative value of the other-acts evidence the prosecution sought to introduce is outweighed by the danger of unfair prejudice under MRE 403. We disagree.

As with all evidence, evidence of a defendant's commission of other acts of domestic violence must pass through MRE 403. MCL 768.27b. Evidence offered against a criminal defendant is, by its very nature, prejudicial to some extent. *Meissner*, 294 Mich App at 451, citing *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Whether evidence *unfairly* prejudices a criminal defendant such that its probative value is outweighed means "there is a danger that the evidence will be given undue or preemptive weight by the jury" or "it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Conaway argues that the other-acts evidence the prosecution sought to introduce contained only allegations of domestic violence and absent any charges, the evidence was unfairly prejudicial. In some instances, Conaway was never charged and in other instances, the victim dropped the charges because she was, in her words, "ashamed and embarrassed to have to come to a courtroom and explain his abusive behavior." However, admission of prior bad acts under MCL 768.27b does not require the prior bad acts take the form of actual convictions. See *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007) (holding that evidence of the

defendant's alleged sexual assaults of a former coworker and ex-fiancé were more probative of whether he committed the charged offense, CSC-I, than they were prejudicial). "[P]rior-bad-acts evidence of domestic violence can be admitted at trial because a full and complete picture of a defendant's history tends to shed light on the likelihood that a given crime was committed." *Cameron*, 291 Mich App at 610.

In this case, Conaway is right to point out that the trial court never explicitly engaged in an MRE 403 balancing test on the record as required under MCL 768.27b before deciding to admit the other-acts evidence. However, to the extent it was error in failing to conduct the MRE 403 analysis, the error was harmless because had the trial court engaged in the balancing test on the record, it would have made the same conclusion to admit the evidence because each each prior act was an act of domestic violence between Conaway and the same victim, and all acts occurred within the last five years. We conclude this does not rise to the level of reversible error because there cannot be an abuse of discretion in admitting such evidence where the prior acts were so similar in nature and close in time to the acts bringing rise to the charged offenses.[8] Evidence that Conaway previously committed domestic violence against the victim by choking her is probative of whether he committed domestic violence by throwing her against the bed frame and choking her here. The prior acts of domestic violence illustrated the nature of Conaway's relationship with the victim and provided information to assist the fact finder in assessing her credibility.

The trial court agreed, and in finding Conaway guilty, stated:

It's also consistent with [the victim's] history with [Conaway] which shows a—and this is one of the reasons why the law allows prior instances of domestic violence to be adduced because this case follows a typical pattern of domestic violence where parties are together in marriage, or in a relationship, and one abuses the other. They go back together. They're afraid to come to court because of the fact they're not strangers. They're [sic] live together. They have children together. This follows exactly that kind of relationship between the parties, and it fits the scenario of a person who wanted to control this woman.

This consideration of the other-acts evidence came after the trial court stated the victim's story was too detailed and too consistent to have been fabricated. See also *People v Schultz*, 278 Mich App 776, 778; 754 NW2d 925 (2008) (noting that, unlike MRE 404(b)(1), MCL 768.27b only requires a showing of "the transparency of a person's character as justification for admitting evidence"). The trial court further minimized the prejudicial effect of the other-acts evidence by

_____

[8] See *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012), stating courts may consider the following facts when applying the MRE 403 balancing test:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

-10-

limiting the prosecution to presenting its proofs at trial—only allowing the victim to testify as to the contents of the police reports instead of allowing the statements within them to be admitted.

Finally, Conaway argues the other acts of domestic violence were not substantiated by any DNA evidence, medical records, or corroborated by other witness testimony. Because the other acts never rose to formal charges, there was no opportunity to develop a record of support for the allegations, and such support is not a requirement under MCL 768.27b. We hold the trial court did not abuse its discretion when it allowed the admission of other-acts evidence in this case. *Adair*, 452 Mich at 485.

## III. SUFFICIENCY OF THE EVIDENCE

Conaway argues next that there was insufficient evidence to sustain his convictions. We disagree.

Sufficiency-of-the-evidence claims are reviewed de novo. *People v Osby*, 291 Mich App 412, 415, 804 NW2d 903 (2011). This Court must view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). However, a "trial court's factual findings in a bench trial are reviewed for clear error." *People v Anderson*, 341 Mich App 272, 277; 989 NW2d 832 (2022). Clear error exists when this Court "is left with a definite and firm conviction" that the trial court made a mistake. *Id.* In addition, "conflicts in the evidence are resolved in favor of the prosecution." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

## A. CSC-III

In criminal cases, "[c]ircumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *People v Johnson*, 340 Mich App 531, 548; 986 NW2d 672 (2022) (quotation marks and citation omitted). With respect to CSC crimes, the victim's testimony alone can provide sufficient evidence to support a conviction. MCL 750.520h.[9]

A person is guilty of CSC-III if (1) "the person engages in sexual penetration with another person and" (2) "force or coercion is used to accomplish the sexual penetration." MCL 750.520d(1)(b). "Any penetration, no matter how slight, is sufficient to satisfy the penetration element of [CSC-III.]" *People v Hunt*, 442 Mich 359, 364; 501 NW2d 359. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body[.]" MCL 750.520a(r). Under MCL 750.520d(1)(b), force or

---

[9] MCL 750.520h states: "The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."

coercion include circumstances listed in MCL 750.520b(1)(f)(*i*) to (*v*). Relevant to the facts of this case is the first circumstance, which is: "(*i*) [w]hen the actor overcomes the victim through the actual application of physical force or physical violence." "[T]he prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002).

In this case, Conaway engaged in sexual penetration with the victim through the use of force while inside his truck in the alley. The victim testified that Conaway's penis touched her vaginal opening and went "[a] little bit through the lips but then it would just fall out." This intrusion into the victim's vaginal opening, although very slight, is sufficient to constitute sexual penetration as a matter of law. MCL 750.520a(r). And while in the vehicle attempting to sexually penetrate the victim, Conaway's hand was, at all times, wrapped around the victim's neck, choking her. When the victim screamed for him to stop, Conaway jammed his thumb into the victim's mouth, grabbing the rest of her face with his other hand. Under MCL 750.520b(1)(f)(*i*), this constitutes the application of physical force used to accomplish the sexual penetration. Because this one instance was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the prosecution established all elements of one count of CSC-III, we need not review the trial court's determination that the sexual intercourse in the bedroom also constituted CSC-III.

We also will not disturb the credibility determination of the trier of fact, in this case the trial court, which stated, upon finding Conaway guilty of CSC-III, that the victim "didn't make this up. Her account is too elaborate and the Court had the opportunity to observe her demeanor, her attitude, and the inconsistencies or not in her testimony." See *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (citation omitted) ("Absent exceptional circumstances, issues of witness credibility are for the trier of fact."). We hold the trial court did not clearly err in finding Conaway guilty beyond reasonable doubt of CSC-III. *Anderson*, 341 Mich App at 277.

## B. DOMESTIC VIOLENCE

The elements of a charge of domestic violence under MCL 750.81(2), the charged offense, include "(1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties." *Cameron*, 291 Mich App at 614. A battery is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005) (quotation marks and citation omitted). Whether the touching caused an injury does not matter. *People v Terry*, 217 Mich App 660, 663; 553 NW2d 23 (1996). An assault is defined as "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Starks*, 473 Mich at 234. "Thus, every battery necessarily includes an assault because a battery is the very consummation of the assault." *Cameron*, 291 Mich App at 614.

In this case, the victim testified that Conaway dragged her into a bedroom and threw her into the bed frame. This action was not accidental. This action was not consented to. This constituted an assault and battery. *Terry*, 217 Mich App at 663; *Cameron*, 291 Mich App at 614.

Conaway's actions in the backyard and alley behind the house also left the victim with a bruised neck and shoulder, scrape marks on her back from when Conaway threw her out of the truck by her head, missing braids and bleeding from her scalp from being pulled by her hair, and nail prints causing bleeding in her left check from being lifted by her head. Again, these acts were no accident and Conaway intended to harm the victim by pulling her hair, choking her, and throwing her body onto the ground. The victim resisted Conaway in the backyard and in his truck by repeatedly telling him to stop, so he lacked consent to touch her this way. Accordingly, these actions also constituted an assault and battery. *Id*.

Neither party disputes that Conaway and the victim were dating, living together, and had two children in common at the time of the incident in this case. We hold a rational trier of fact could conclude beyond a reasonable doubt that the prosecution established both elements of the charged offense of domestic violence, and the trial court did not clearly err in finding Conaway guilty of one count of domestic violence. *Anderson*, 341 Mich App at 277.

IV.  SENTENCING

Finally, Conaway challenges the scoring of prior offense variable (PRV) 7, OV 3, OV 4, and OV 19.

A.  ISSUE PRESERVATION AND STANDARD OF REVIEW

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citations omitted). At Conaway's sentencing hearing, the prosecution asked that OV 19 be scored at zero points, and that the sentencing investigation report (SIR) be corrected to reflect that Conaway was acquitted of assault with intent to do great bodily harm less than murder. And although no party raised an objection to the scoring of PRV 7, OV 3, and OV 4 at sentencing, Conaway filed a motion to remand for resentencing in this Court challenging the scoring of said variables on July 29, 2024. Therefore, all sentencing issues raised by Conaway are preserved for appellate review. *Id*.

When reviewing alleged errors in sentencing, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. citing *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003).

B.  PRV 7

Conaway first challenges the scoring of PRV 7 at 10 points. PRV 7 is properly scored at 10 points when the offender has one subsequent or concurrent felony conviction. MCL 777.57(1)(b). Conaway was acquitted of the additional felony counts in this case, and did not commit another felony offense after the offense date of the sentencing offense, July 8, 2020. Scoring PRV 7 at zero points lowers Conaway's total PRV score to 57 points, which keeps him in PRV Level E. This Court has previously held that where a guideline variable score is at issue and

does not change the guidelines, the remedy is ministerial in nature. See *People v Barnes*, 332 Mich App 494, 509; 957 NW2d 62 (2020). Because both parties agree on appeal that PRV 7 should be scored at zero points instead of 10 points, we remand for a ministerial correction to the SIR to reflect zero points for PRV 7.

### C. OV 3 AND OV 4

Next, Conaway challenges the scoring of OV 3 at 10 points. He argues OV 3 should have been scored at five points because the victim did not stay at the hospital to receive treatment and never sought follow up care, so arguably, she did not *require* medical treatment. We disagree.

OV 3 is properly scored at 10 points where bodily injury requiring medical treatment occurred to a victim, MCL 777.33(1)(d), and is properly scored at five points where bodily injury *not* requiring medical treatment occurred to a victim, MCL 777.22(1)(e). A victim need not have actually sought medical treatment, even if the treatment was deemed necessary. *People v Maben*, 313 Mich App 545, 551; 884 NW2d 314 (2015); MCL 777.33(3). In *Maben*, when the defendant challenged the scoring of OV 3 on the basis of disputed evidence regarding treatment following an assault by strangulation, this Court stated that "it was not necessary to establish that [the victim] actually went to the hospital." *Maben*, 313 Mich App at 551. This Court held that a preponderance of the evidence supported scoring OV 3 at t10 points where responding police officers "observed" redness around the victim's "neck area" and where the victim "complained of soreness to his neck and throat area," even where he refused an ambulance and told officers he "would seek treatment on his own." *Id*.

In this case, scoring 10 points for OV 3 is supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438. The victim testified she was "bleeding everywhere" after Conaway's assault. The victim was bleeding from her head because Conaway pulled her braids out, and she was bleeding from left cheek because Conaway's nail prints broke the skin in her cheek. The victim was choked hard enough that she was struggling to breathe or verbally resist Conaway, and had bruises on her shoulder and neck, as well as scrape marks on her back. Scoring OV 3 at 10 points would have been appropriate even if the victim did not go to the emergency room at Henry Ford Hospital. *Maben*, 313 Mich App at 551. We find no clear error.

OV 4 evaluates psychological injury to a victim, and states 10 points shall be scored if a victim suffers serious psychological injury that "*may* require professional treatment." MCL 777.34(l)(a) (emphasis added). The fact that treatment has not been sought is not conclusive. MCL 777.34(2). But "the fact that [the victim] was afraid at the time of the incident, by itself, does not give rise to a serious psychological injury requiring professional treatment." *People v White*, 501 Mich 160, 165; 905 NW2d 228 (2017) (quotation marks omitted).

Conaway argues the trial court erred in scoring OV 4 at 10 points because there was no record evidence that the victim's injury required professional treatment. However, there is plenty of evidence from the victim impact statement given at Conaway's sentencing showing the victim not only needed psychological treatment, but actively sought it. The victim stated at sentencing, referencing the incident in this case, that she had nightmares and endured trauma from Conaway's abuse and being separated from her children. After the incident, she had two therapists and a psychiatrist, was being treated for complex PTSD, and was prescribed medicine to help block

nightmares and flashbacks in order to sleep. Thus, scoring OV 4 at 10 points is supported by a preponderance of the evidence, and we find no clear error. *Hardy*, 494 Mich at 438.

## D. OV 19

Next, Conaway challenges the scoring of OV 19 at 10 points. MCL 777.49 requires scoring OV 19 at 10 points if "the offender [] interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." At Conaway's sentencing hearing, the prosecution asked the trial court to correct OV 19 to be scored at zero points and defense counsel agreed. The parties do not dispute this issue on appeal. We remand for a ministerial correction to the SIR to reflect zero points for OV 19. *Barnes*, 332 Mich App at 509.[10]

## V. CONCLUSION

We hold the trial court did not abuse its discretion in admitting other-acts evidence under MCL 768.27b, and did not plainly err in admitting hearsay statements under MCL 768.27c. There was also sufficient evidence to sustain Conaway's convictions of CSC-III and domestic violence.

Because Conaway's total PRV score is 57 points keeping him at PRV Level E, and his total OV score is 95 points keeping him in OV Level VI, his guidelines do not change. However, we remand this matter for the ministerial task of correcting the SIR as follows: change PRV 7 to reflect zero points; change OV 10 to reflect 10 points; change OV 19 to reflect 0 points; and, as Conaway raises in his brief on appeal, on page 1 of the PSIR, omit the assault charge (charge 2) from the list of final charges because Conaway was acquitted of this charge at trial. Finally, on page 9 of the PSIR regarding Offense No. 10 of 11, omit the assault charge from the list of final charges.

---

[10] Conaway lastly asserts his sentence of 18 to 40 years' imprisonment was unreasonable. But "[w]hen a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate. However, unlike a mandate that an appellate court affirm a within-guidelines sentence, the presumption of proportionality may be overcome." *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023). Conaway merely states in a conclusionary fashion that his sentence is unreasonable and has not presented this Court with anything to overcome the presumption of proportionality. See *People v Kevorkian*, 248 Mich App 373, 388; 639 NW2d 291 (2001) (citation omitted) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). "[A]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Conaway's proportionality argument is abandoned and his within guidelines sentence is reasonable.

Affirmed and remanded for ministerial corrections.  We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace